PD-1252-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/22/2015 11:37:45 AM
Accepted 9/24/2015 1:49:53 PM
ABEL ACOSTA
CLERK

NO. PD · _____

IN THE

COURT OF CRIMINAL APPEALS

--------------------------------------------------------------------------------

RODNEY WAYNE ALLEN,
Appellant,

VS.

THE STATE OF TEXAS,
Appellee.

--------------------------------------------------------------------------------

ON APPEAL FROM THE 262ND CRIMINAL DISTRICT COURT
OF HARRIS COUNTY, TEXAS

AND ON DISCRETIONARY REVIEW
FROM THE FOURTEENTH JUDICIAL DISTRICT AT HOUSTON

--------------------------------------------------------------------------------

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

--------------------------------------------------------------------------------

**BRIAN W. WICE**

FILED IN
COURT OF CRIMINAL APPEALS

September 24, 2015

ABEL ACOSTA, CLERK

440 Louisiana Suite 900
Houston, Texas 77002-1635
(713) 524-9922 PHONE
(713) 236-7768 FAX
TBA NO. 231417800
wicelaw@att.net

COUNSEL FOR APPELLANT

ORAL ARGUMENT REQUESTED

## IDENTIFICATION OF THE PARTIES

Pursuant to TEX.R.APP.P. 38.1(a), a list of the names and addresses of all interested parties is provided below so the members of this Honorable Court may determine whether they are disqualified to serve or should recuse themselves from participating in this matter:

**Complainant:**
Jonathan Diles

**Appellant or criminal Defendant:**
Rodney Wayne Allen

**Trial counsel for Appellant:**
Letitia Quinones & Carl Moore
2120 Welch
Houston, Texas 77019

**Counsel on appeal for Appellant:**

Brian Wice
440 Louisiana Suite 900
Houston, Texas 77002
Lead Counsel

Adele Hedges
2719 Colquitt
Houston, Texas 77098
Of Counsel

**Counsel for the State:**
Jennifer Meriwether, Carolyn Allen, Clinton Morgan
Harris County District Attorney's Office
1201 Franklin
Houston, Texas 77002

**Trial Judge:**
Honorable Denise Bradley
262nd Criminal District Court
Harris County, Texas

# TABLE OF CONTENTS

PAGE

IDENTIFICATION OF THE PARTIES .......................... ii

STATEMENT REGARDING ORAL ARGUMENT ................. 1

STATEMENT OF THE CASE .............................. 1

STATEMENT OF THE PROCEDURAL HISTORY ............... 2

APPELLANT'S GROUNDS FOR REVIEW ..................... 2

*1. The majority of the court of appeals erred in holding that Appellant failed to preserve error in the exclusion of evidence of Diles's prior convictions, his physical abuse of Castillo, and his gang membership.*

*2. The majority of the court of appeals erred in holding that the trial court did not abuse its discretion in excluding evidence of Diles's physical abuse of Castillo, and Diles's gang membership to show that he was the first aggressor, to show the reasonableness of Appellant's apprehension of danger, and to show that Appellant acted in self-defense.*

*3. The majority of the court of appeals erred in holding that the trial court did not abuse its discretion in excluding evidence of Diles's physical abuse of Castillo and his gang membership after the State opened up the door to its admission.*

ARGUMENT AND REASONS FOR REVIEW .................... 2

1. Introduction ..................................... 3

2. The Panel Majority's Hyper-Technical Take on Error Preservation Conflicts with **Lankston** and its Well-Settled Precedent ......... 5

3. Justice McCally's Disagreement with the Panel Majority's Hyper-Technical Take on Preservation of Error . . . . . . . . . . . . . . . . . 7

4. The Panel Majority's Reasoning and Analysis Conflicts With Decisions from This Court and the Courts of Appeals . . . . . . . 8

a. Preservation: Exclusion of Evidence of Diles's' Prior Convictions . . 8

b. Preservation: Exclusion of Evidence of Diles's Gang Membership . 12

c. Preservation: Exclusion of Evidence Diles Abused Castillo . . . . . . 14

5. Exclusion of Evidence of Diles's Physical Abuse of Castillo . . . . . . 16

6. Exclusion of Evidence of Diles's Membership in the Crips . . . . . . . 16

7. Evidence of Diles's Physical Abuse of Castillo was not Collateral . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

APPENDIX: Published Opinion of the Fourteenth Court of Appeals

PAGE

CASES:

Alcocer v. State, 256 S.W.3d 398
(Tex.App.– San Antonio 2008, no pet.) . . . . . . . . . . . . . . . . . . . . . . 15

Allen v. State, ___ S.W.3d ___, 2015 WL 4718861
(Tex.App.– Houston [14th Dist.] August 4, 2015) . . . . . . . . . . . . passim

Bennett v. State, 235 S.W.3d 241 (Tex.Crim.App. 2007) . . . . . . . . . . . . 5

Billodeau v. State, 277 S.W.3d 34 (Tex.Crim.App. 2009) . . . . . . . . . . 18

Bowen v. Carnes, 343 S.W.3d 805 (Tex.Crim.App. 1998) . . . . . . . . . . 21

Cameron v. State, 241 S.W.3d 15 (Tex.Crim.App. 2007) . . . . . . . . . . 14

Clark v. State, 365 S.W.3d 333 (Tex.Crim.App. 2012) . . . . . . . . . . . . . 6

Clarke v. State, 270 S.W.3d 573 (Tex.Crim.App. 2008) . . . . . . . . . . . . 5

Coleman v. State, 545 S.W.2d 831 (Tex.Crim.App. 1977) . . . . . . . . . . 18

Everitt v. State, 407 S.W.3d 259 (Tex.Crim.App. 2013) . . . . . . . . . . 3,5

Ex parte Heidelberg, 2006 WL 3306880
(Tex.Crim.App. November 15, 2006) . . . . . . . . . . . . . . . . . . . . . . . . 7

Ex parte Thompson, 153 S.W.3d 420 (Tex.Crim.App. 2005) . . . . . . . . 14

Fry v. State, 915 S.W.3d 554
(Tex.App. – Houston [14th Dist.] 1995, pet. ref'd) . . . . . . . . . . . . . 3,20

Geuder v. State, 115 S.W.3d 11 (Tex.Crim.App. 2003) . . . . . . . . . . . . 10

Gillenwaters v. State, 205 S.W.3d 534 (Tex.Crim.App. 2006) . . . . . . . 14

Haley v. State, 173 S.W.3d 510 (Tex.Crim.App. 2005) . . . . . . . . . . . 10

Harrison v. State, 241 S.W.2d 23 (Tex.Crim.App. 2007) . . . . . . . . . . 20

Horbach v. State, 43 Tex. 242 (1875) . . . . . . . . . . . . . . . . . . . . 3

Keehn v. State, 233 S.W.3d 348 (Tex.Crim.App. 2007) . . . . . . . . . . . 11

Lankston v. State, 827 S.W.2d 907 (Tex.Crim.App. 1992) . . . . . . . . 4,5

Leal v. State, ___ S.W.3d ___, 2015 WL 3940639
(Tex.App.– Houston [14th Dist.] June 25, 2015, pet. filed) . . . . . . . 8,9

Martin v. State, 346 S.W.3d 229
(Tex.App.– Houston [14th Dist.] 2011, no pet.) . . . . . . . . . . . . . . . 19

Molina v. State, 450 S.W.3d 540
(Tex.App.– [14th Dist.] October 30, 2014, no pet.) . . . . . . . . . . . . . 15

Rey v. State, 897 S.W.2d 333 (Tex.Crim.App. 1995) . . . . . . . . . . . . . 8

Renteria v. State, 206 S.W.3d 689 (Tex.Crim.App. 2006) . . . . . . . . . 20

Rivas v. State, 275 S.W.3d 880 (Tex.Crim.App. 2009) . . . . . . . . . . . . 6

Saenz v. State, ___ S.W.3d ___, 2015 WL 4773442
(Tex.App. – Houston [14th Dist.] August 13, 2015, no pet.) . 9,10,12,13

Siverand v. State, 89 S.W.3d 216
(Tex.App.– Corpus Christi 2002, no pet.) . . . . . . . . . . . . . . . . 13,14

Smith v. State, 355 S.W.3d 138
(Tex.App.– Houston [1st Dist.] 2011, pet. ref'd) . . . . . . . . . . . . . . . 16

State v. Terrazas, 962 S.W.2d 38 (Tex.Crim.App. 1998) . . . . . . . . . . 21

Stewart v. State, 13 S.W.3d 127
   (Tex.App.– Houston [14th Dist.] 2000, pet ref'd) . . . . . . . . . . . . . . . . . 9

Taylor v. State, 769 S.W.2d 232 (Tex.Crim.App. 1989) . . . . . . . . . . . 15

Torres v. State, 117 S.W.3d 891 (Tex.Crim.App. 2003) . . . . . . . . . 13,15

Torres v. State, 71 S.W.3d 758 (Tex.Crim.App. 2002) . . . . . . . . . . . . 15

## TEXAS RULES OF APPELLATE PROCEDURE:

Rule 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

Rule 47.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rule 66.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11,13

Rule 66.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rule 66.3(c) . . . . . . . . . . . . . . . . . . . . . . . . . 6,8,9,13,14,16,18,19

Rule 66.3(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9,11

Rule 66.3(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,16,18

Rule 66.3(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TEXAS RULES OF EVIDENCE:

Rule 103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is warranted because this case presents important questions as to the accused's right to elicit evidence of a victim's character and reputation for violence in a murder case in support of a claim of self-defense, and what counsel must do to preserve error when this evidence is erroneously excluded – critical issues likely to recur in future cases.

## STATEMENT OF THE CASE

Indicted for the murder of Jonathan Diles, Appellant pleaded not guilty, and argued he acted in self-defense. He sought to elicit evidence of Diles's physical abuse of his girlfriend, Sharon Castillo, his convictions for assault and theft,[1] and that Appellant knew that Diles was a Crip,[2] to show Diles was the first aggressor, and the reasonableness of his claim of apprehension of danger. In the face of Appellant's series of requests, objections and offers of proof, the trial court excluded all of this evidence. Jurors rejected his claim of self-defense, convicted him of murder, and the

---

[1] Diles was charged with robbery, but the charges were reduced to theft. **Slip op.** at 3 n. 2.

[2] The Crips are one of the largest and most violent associations of street gangs in the United States" and are "known to be involved in murders, robberies, drug dealing, among many other criminal pursuits." www.wikipedia.org (last visited August 15, 2015).

1

trial court assessed punishment at 45 years in prison. A divided panel affirmed the conviction in a published opinion. **Allen v. State**, ___ S.W.3d ___, 2015 WL 4718861 (Tex.App.– Houston [14th Dist.] August 4, 2015).

## STATEMENT OF THE PROCEDURAL HISTORY

The court of appeals issued its published opinion on August 4, 2015 and denied Appellant's motion for reconsideration en banc on August 27, 2015. This petition for discretionary review is due on September 28, 2015.

## GROUNDS FOR REVIEW

*1. The majority of the court of appeals erred in holding that Appellant failed to preserve error in the exclusion of evidence of Diles's prior convictions, his physical abuse of Castillo, and his gang membership.*

*2. The majority of the court of appeals erred in holding that the trial court did not abuse its discretion in excluding evidence of Diles's physical abuse of Castillo, and Diles's gang membership to show that he was the first aggressor, to show the reasonableness of Appellant's apprehension of danger, and to show that Appellant acted in self-defense.*

*3. The majority of the court of appeals erred in holding that the trial court did not abuse its discretion in excluding evidence of Diles's physical abuse of Castillo and his gang membership after the State opened up the door to its admission.*

2

## ARGUMENT AND REASONS FOR REVIEW

### 1. Introduction

"The court of appeals's parsing of appellant's objections is the kind of hyper-technical analysis that we have repeatedly rejected."

**Everitt v. State**, 407 S.W.3d 259, 263 (Tex.Crim.App. 2013).

"If, then, the character of the assailant in any case has helped to form a reasonable belief in the mind of the assailed that his life was then in danger, when the acts alone would fail to do it, the jury should in some ways be informed of the character of the assailant, as well as of his acts to enable them to understand that the belief was a reasonable one."

**Fry v. State**, 915 S.W.2d 554, 560
(Tex.App.– Houston [14th Dist.] 1995, pet. ref'd),
quoting **Horbach v. State**, 43 Tex. 242, 251 (1875).

Discretionary review in this matter is required because the panel majority's published opinion turns criminal trials into the most rigorous, intractable, and uncompromising of ordeal by technicality, where the most fervent, repeated, and good-faith attempts by defense counsel to preserve error clearly evident to the trial court and opposing counsel, fall victim to the unforgiving, unsupported, and unsupportable appellate parsing long condemned by this Court and the courts of appeals. Discretionary review is also warranted because the panel majority's published opinion has

3

sanctioned the wholesale exclusion of relevant evidence essential to the accused's defensive theory on legal theories and arguments neither briefed nor argued by the State, that are in stark conflict with decisions from this Court. As recounted below, the resolution of these critical and recurring issues in the court of appeals's published opinion implicates all six of the reasons for granting discretionary review in Tex. R. App. P. 66.3.

### 2. The Panel Majority's Hyper-Technical Take on Preservation of Error Conflicts with *Lankston* and its Well-Settled Progeny

The panel majority's evaluation of defense counsel's unstinting efforts at preserving error is constructed upon on a brief passage quoting **Lankston v. State**, 827 S.W.2d 907, 908-09 (Tex.Crim.App. 1992). **Slip op.** at 18. Through this narrow and unforgiving lens, the panel majority held that defense counsel's unrelenting efforts to bring her complaints to the attention of the trial court and the State were nevertheless wanting. It is ironic that the panel majority cited **Lankston**, universally regarded as the seminal decision from this Court that sent forth the word that, "The standards of procedural default, therefore, are not to be implemented by splitting hairs in the appellate courts. ... Courts should reach the merits of those complaints without requiring that the parties read some special

4

script to make their wishes known." **Lankston v. State**, 827 S.W.3d at

909. Indeed, in the two-plus decades since **Lankston** was decided, this

Court has, time and again, instructed appellate courts to avoid the "hyper-

technical," "hair-splitting," "magic words are required," "special script

reading," error preservation paradigm embraced by the panel majority's

published opinion. In myriad decisions neither discussed nor distinguished

by the panel majority, this Court has made it abundantly clear that:

- "The court of appeals's parsing of appellant's objections is the kind of hyper-technical analysis that we have repeatedly rejected." **Everitt v. State**, 407 S.W.3d 259, 263 (Tex.Crim.App. 2013).

- "'Magic words' are not required; a complaint will be preserved if the substance of the complaint is conveyed to the trial judge." **Bennett v. State**, 235 S.W.3d 241, 243 (Tex.Crim.App. 2007).

- "The context of appellant's arguments makes his position crystal clear. ... He added more whistles and bells on appeal, but the tune was the same. ... It was not procedurally defaulted." **Clarke v. State**, 270 S.W.3d 573, 577 n. 3, 581 (Tex.Crim.App. 2008).

- "The Court of Appeals' statement that, because he 'did not identify which Rule of Evidence, if any, was violated by the admission of the nurse's report .... he failed to preserve his objection for appeal,' is one with which we do not agree." **Rivas v. State**, 275 S.W.3d 880, 887 (Tex.Crim.App. 2009).

- If "there have been statements or actions on the record that clearly indicate what the judge and opposing counsel understood the argument to be," claim is preserved "without having been explicitly stated." **Clark v. State**, 365 S.W.3d 333, 339 (Tex.Crim.App. 2012).

By turning a blind eye to **Lankston**, and this line of precedent the panel majority's published decision neither discusses nor distinguishes, its published opinion is squarely in conflict with decisions from this Court, and warrants discretionary review pursuant to Tex. R. App. P. 66.3(c).[3]

### 3. *Justice McCally's Disagreement with the Panel Majority's Hyper-Technical Take on Preservation of Error*

Given the panel majority's refusal to honor that longstanding body of authority from this Court set out above, it is not surprising that Justice McCally disagreed with its holding that defense counsel's enduring efforts at preserving error somehow fell short. While Justice McCally joined the panel's holding that error in the exclusion of Diles's prior convictions was not preserved, she held that Appellant preserved his complaints that the trial court erred in refusing to permit him to cross-examine Castillo on Diles's gang membership as it affected her credibility and that the State opened up the door to rebuttal character evidence that Diles was "just real laid back." **Slip op.** at 3-4. (McCally, J., concurring). This disagreement on a material question of law necessary to the court's ruling warrants

---

[3] "[W]hether a court of appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals..."

6

discretionary review pursuant to Tex. R. App. P. 66.3(e).[4]

### 4. The Panel Majority's Reasoning and Analysis Conflicts with Decisions from this Court and the Courts of Appeals

The panel majority's conclusion that defense counsel waived claims impacting Appellant's constitutional right to a fair trial with a reliable result, and to effective assistance of counsel, like Banquo's ghost in Act III of Macbeth, will continue to haunt the post-conviction writ process in this case for years to come. **See Ex parte Heidelberg**, 2006 WL 3306880 at *6 (Tex.Crim.App. November 15, 2006)(granting habeas corpus relief after court of appeals held defense counsel's objections to State's questions and comments on defendant's post-arrest silence failed to preserve error). As set out below, the panel majority's hyper-technical error preservation ploy, one long rejected by this Court, and by extension, the courts of appeals, warrants discretionary review pursuant to Rule 66.3(c) and 66.3(a).[5]

### a. Preservation: Exclusion of Evidence of Diles's Prior Convictions

The panel's holding that defense counsel did not preserve error as to

---

[4] "[W]hether the justices ... have disagreed on a material question of law necessary to the court's decision."

[5] "[W]hether a court of appeals' decision conflicts with another court of appeals' decision on the same issue."

Diles's' prior convictions because she failed to request a ruling on their admissibility misapplies the adverse ruling requirement of Tex. R. App. P. 33.1 and warrants discretionary review pursuant to Rule 66.3(d).[6] When compared with the specificity required in objections, this Court has held, "[W]e are less stringent in our requirements of the trial court's ruling on an objection. A court's ruling on a complaint or objection can be impliedly rather than expressly made. A trial court's ruling on a matter need not be expressly stated *if its actions or other statements otherwise unquestionably indicate a ruling.*" **Rey v. State**, 897 S.W.2d 333, 336 (Tex.Crim.App. 1995)(emphasis added). Ironically, a different panel of the Fourteenth Court of Appeals has only recently cited **Rey** with approval in holding the defendant preserved error given the trial court's implicit denial of his motion to suppress. **See Leal v. State**, ___ S.W.3d ___, 2015 WL 3940639 at *1 (Tex.App. – Houston [14th Dist.] June 25, 2015, pet. filed)(op. on remand)(in determining if error was preserved, "We consider the context in which the complaint was made and the parties' shared understanding at the time. ... Leal's claim was preserved when the trial

_____

[6] "[W]hether a court of appeals ... appears to have misconstrued a ... rule."

8

court implicitly overruled his amended motion to suppress."). Moreover, another panel of the Fourteenth Court of Appeals has recently reaffirmed the principle that, "We will not impose upon appellant the requirement to perform a useless act to preserve error," by request[ing] the same instruction that had just been denied." **Saenz v. State**, ___ S.W.3d at ___, 2015 WL 4773442 at *2 n. 3 (Tex.App. – Houston [14th Dist.] August 13, 2015, no pet.), citing **Stewart v. State**, 13 S.W.3d 127, 131 (Tex.App.– Houston [14th Dist.] 2000, pet. ref'd). The panel's published decision recasts Rule 33.1's "ruling" requirement in a hyper-technical manner never before contemplated by this Court, or by the Fourteenth Court of Appeals in **Leal**, **Saenz**, or **Stewart**, and warrants review pursuant to Rules 66.3(c), 66.3(a), and 66.3(d).

Discretionary review is also warranted because the panel failed to address Appellant's claim that defense counsel's request to elicit evidence of Diles's prior convictions was a stand-alone request without regard to the State's motion in limine. Appellant argued that he was not required to re-urge his request to admit Diles's prior convictions, had it been the defense, and not the State, who filed the motion in limine seeking the exclusion of evidence. **Apt's Reply Brf.** 21-22. Because it is unnecessary

9

for a defendant to repeat an objection made outside the jury's presence to preserve error in the *admission* of evidence when the evidence is offered, as mandated by Tex. R. Evid. 103(a), **Haley v. State**, 173 S.W.3d 510, 517 (Tex.Crim.App. 2005), it stands to reason that Appellant was not obligated to repeat his initial request made outside the jury's presence to preserve error in the *exclusion* of evidence. **See Saenz v. State**, ___ S.W.3d at ___, 2015 WL 4773442 at *2 n. 3 ("We will not impose upon appellant the requirement to perform a useless act to preserve error..."). Restated, the trial court's ruling granting the State's motion in limine seeking *exclusion* of Diles's prior convictions was itself an adverse ruling on Appellant's request seeking *admission* of this evidence. **See Geuder v. State**, 115 S.W.3d 11, 14 (Tex.Crim.App. 2003)("The trial court's ruling was not an adverse ruling on the motion in limine. Rather, it was an adverse ruling, outside the presence of the jury, on the admissibility of appellant's prior convictions....").

Discretionary review is warranted for myriad reasons. First, the court of appeals's refusal to address this legal argument, one necessary to the disposition of the appeal violates Tex. R. App. P. 47.1, and warrants

discretionary review pursuant to Rule 66.3(f).[7] See **Keehn v. State**, 233 S.W.3d 348, 349 (Tex.Crim.App. 2007)(court of appeals's failure to address each of appellant's arguments warranted discretionary review). Second, the court's misinterpretation of Rule 103(a), that a ruling obtained outside the jury's presence on the admissibility of evidence need not be re-urged to preserve error warrants review under Rule 66.3(d). Third, the court of appeals's refusal to consider this argument, one based on the holding in **Saenz** that the law does not require the doing of a useless act to preserve error warrants review pursuant to Rule 66.3(a). Finally, this Court has never addressed Appellant's argument that the policy reasons behind Rule 103(a) should apply with equal force to the exclusion of evidence and this important, recurring, albeit unresolved question of state law warrants review under Rule 66.3(b).[8]

### b. Preservation: Exclusion of Evidence Diles was a Crip

The panel majority held that Appellant failed to preserve the claim

---

[7] "[W]hether a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision."

[8] "[W]hether a court of appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals..."

that he was entitled to cross-examine Castillo on Diles's membership in the Crips as a matter affecting her credibility because he "did not make an offer of proof concerning the testimony he wished to elicit..." **Slip op.** at 35. It held it was "not otherwise apparent from the record" that Appellant wanted to elicit from Castillo that he knew Diles was a Crip. Id.

That defense counsel, long before Castillo or any other witness ever took the stand, made it abundantly clear to the trial court and opposing counsel that she wanted to elicit evidence that Diles was a Crip, cannot be seriously debated. What other reasons could the State have possibly had for filing its motion in limine[9] in the first place? Because the trial court thwarted defense counsel at every turn, it was no longer incumbent upon her to perform a useless act to preserve error. **Saenz v. State**, ___ S.W.3d at ___, 2015 WL 4773442 at *2 n. 3. As this Court has remarked in an identical context, "We also do not think it was necessary for the appellant to re-offer ... testimony [of the decedent's act of aggression] after the appellant testified about the fray" [because] ... "the trial court made it clear that it was not going to allow testimony about the prior threat by

---

[9] The State's motion in limine sought to preclude the defense or its witnesses from alluding or referring to any prior criminal history, bad acts or character of the deceased, Jonathan Diles, or the witnesses in this case, without first approaching the bench. (CR 137).

[the victim]." **Torres v. State**, 117 S.W.3d 891, 895 (Tex.Crim.App. 2003).

Given "the context in which the complaint was made and the parties' shared understanding at the time," the panel majority's decision conflicts with **Torres**, **Leal**, **Saenz**, and **Stewart** and compels the granting of review pursuant to Rules 66.3(a) and 66.3(c).

### c. Preservation: Exclusion of Evidence that Diles Abused Castillo

The panel majority held that Appellant failed to preserve the claim as to the exclusion of Diles's repeated physical abuse of Castillo in the first instance, or to correct the false impression the State created because he:

- failed to tell the trial court she wanted to cross-examine Castillo to discredit her testimony as to Diles's peaceable character because she did not refer to the "laid back" testimony during her offer of proof.[10] **Slip op. 42-43.**

The panel majority's holding that defense counsel had to utter the words "Mello was just real laid back" or suffer waiver of this claim calls into question the fairness of this trial and the reliability of its result. **See**

---

[10] Without regard to whether this holding conflicts with decisions from this Court, the panel majority's resolution of this claim is troubling. Aside from the fact that the authority relied on by the panel majority was not cited in the State's brief, and ignores the State's concession in oral argument that it had opened the door to the admission of this very evidence, the panel majority resolved this issue on a discrete legal theory neither briefed nor argued by the State. **See Siverand v. State**, 89 S.W.3d 216, 218 (Tex.App–Corpus Christi 2002, no pet.)(appellate court may not "abandon [its] role as impartial jurists and become advocates for the State advancing arguments in order to affirm.").

<u>Ex parte Thompson</u>, 153 S.W.3d 420, 421 (Tex.Crim.App. 2005)(Cochran, J., concurring)("Our criminal justice system makes two promises to its citizens: a fundamentally fair trial and an accurate result. When either of those two promises are not met, the criminal justice system itself falls into disrepute and will eventually be disregarded."). This hyper-critical "parsing of objections" theory embraces the very requirements rejected in <u>Lankston</u>, <u>Bennett</u>, <u>Everitt</u>, and <u>Rivas</u>, and warrants review pursuant to Rule 66.3(c). See <u>Cameron v. State</u>, 241 S.W.3d 15, 22 (Tex.Crim.App. 2007)("Based on the record, it is evident that the discussion regarding the admissibility of the evidence was indeed specific enough to apprise the trial judge [of the defendant's complaint].") <u>Gillenwaters v. State</u>, 205 S.W.3d 534, 537 (Tex.Crim.App. 2006)(error preserved for review where "any reasonable judge probably would have understood the [objection], in context."); <u>Taylor v. State</u>, 769 S.W.2d 232, 234 (Tex.Crim.App. 1989) (objection preserved error "[i]f we assume that the trial judge listened to the evidence presented at trial, and understood the law of criminal responsibility as it applies to the facts of this case."); see also <u>Alcocer v. State</u>, 256 S.W.3d 398, 402 (Tex.App.– San Antonio 2008, no pet.)(Hilbig, J., concurring)("Public confidence in our criminal justice system is eroded

14

when we fail to address the merits of a complaint merely because we too broadly construe the rules applicable to waiver.").

*5. Exclusion of Evidence of Diles's Repeated Physical Abuse of Castillo*

*6. Exclusion of Evidence of Diles's Membership in the Crips*

The panel majority's holding that evidence of Diles's physical abuse of Castillo and his gang membership – evidence essential to Appellant's self-defense claim – was properly excluded because neither failed to clarify whether Diles was the first aggressor, nor was it necessary to clarify Appellant's apprehension of danger, **slip op.** at 28-32, conflicts with this Court's decisions in <u>Torres v. State</u>, 117 S.W.3d 891, 895 (Tex.Crim.App. 2003), <u>Torres v. State</u>, 71 S.W.3d 758, 760-62 (Tex.Crim.App. 2002), and <u>Molina v. State</u>, 450 S.W.3d 540, 552 (Tex.App.– Houston [14th Dist.] October 30, 2014, no pet.). Discretionary review is warranted under Rules 66.3(a) and 66.3(c). Moreover, Justice McCally refused to join the panel majority's holding or analysis as it related to the apprehension-of-danger theory of admissibility because it followed, and so adopted as Fourteenth Court of Appeals's precedent, <u>Smith v. State</u>, 355 S.W.3d 138, 150 (Tex.App.– Houston [1st Dist.] 2011, pet. ref'd), a decision she believed was wrong. **Slip op.** at 5 (McCally, J., concurring). As Justice McCally aptly

15

pointed out:

> The Court of Criminal Appeals has never required a defendant to demonstrate that the victim's conduct was ambiguous prior to introducing character evidence to support the defendant's own apprehension of danger [because its decisions] upon which **Smith** relies for its "unambiguous acts" requirement are first-aggressor cases. ... [A]ppellant was entitled to use ... evidence of specific prior acts of violence by Diles, known to appellant, to show that appellant was in fear of his life and reasonably so.
>
> ... Whether Diles's motive for placing appellant in a full nelson is or is not "ambiguous" from the totality of the testimony should not deprive appellant of the chance to show that his fear of Diles was reasonable in light of [his] physically violent past acts.

<u>Id</u>. at 6-7. Justice McCally's disagreement with the reasoning of the panel majority's published ruling on a material question of law that is important and recurring warrants review pursuant to Rule 66.3(e).

### 7. *Evidence of Diles's Repeated Physical Abuse was not Collateral*

In spite of the State's concession at oral argument that it opened the door to the admission of testimony of Diles's physical abuse of Castillo to correct the false impression it left about his character, the panel majority nevertheless concluded that the trial court did not err in excluding this testimony because it was a collateral matter that did not bear upon her possible animus, motive or ill will she had to testify against Appellant.

16

**Slip op.** at 37.

The panel majority's belief that Appellant failed to explain how this testimony "bore directly on '[Castillo's] animus, motive, and ill will," **slip op.** at 37, ignores the underlying narrative of this trial: Appellant killed the man whom Castillo called her husband. What greater animus, motive, and ill will could possibly exist on Castillo's part than to see the man who took Diles's life punished? What greater way to ensure that this came to pass than Castillo minimizing, indeed, re-writing Diles's history of violence and aggression, especially toward her? As this Court has made clear, "The possible animus, motive, or ill will of a prosecution witness who testifies against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him." Billodeau v. State, 277 S.W.3d 34, 43 (Tex.Crim.App. 2009); **see also** Coleman v. State, 545 S.W.2d 831, 833-334 (Tex.Crim.App. 1977) ("There can be, we think, no doubt that it is always permissible, in every case where it can be shown by competent evidence, to make proof of the hostile attitude of any witness in respect to any party or any cause before

the court.").

The panel majority's refusal, in its published opinion, to recognize Appellant's fundamental right to subject Castillo's most basic of biases in the crucible of cross-examination cannot be reconciled with controlling case law. And, its conclusion that this critical evidence "does not explain Diles's intent ... nor does it clarify appellant's apprehension of danger from Diles," **slip op.** at 38, is at odds with this Court's teachings in **Torres** and its progeny, and Justice McCally's concurring opinion. The resolution of this critical and recurring issue in this published opinion warrants review pursuant to Rules 66.3(c) and 66.3(e).

## 8. *The Door was Voluntarily Opened to Rebuttal Character Evidence*

In spite of the State's concession at oral argument that it opened the door to the admission of this testimony to correct the false impression it had left about Diles's character, the panel majority held the trial court did not err in excluding this testimony.[11] The panel majority found Castillo

---

[11] Appellant recognizes the State's confession is not conclusive. **See Martin v. State**, 346 S.W.3d 229, 233 n. 1 (Tex.App.– Houston [14th Dist.] 2011, no pet.). But not only is the State's concession "entitled to great weight," **id.**, the Fourteenth Court of Appeals has only recently pointed to the State's concession in concluding that error was preserved. **Saenz v. State**, ___ S.W.3d ___, 2015 WL 4773442 at 2 ("In its brief, the State concedes that any alleged error ... was preserved for appellate review."). It would seem odd that the panel majority declined to recognize the importance of the State's concession, let alone, fail to acknowledge the concession itself.

did not voluntarily open the door by volunteering testimony about this abuse and "testified on this matter only when prompted by appellant's counsel." **Slip op.** at 39. This belief, premised upon an argument neither briefed nor argued by the State, is informed by a myopic interpretation of both this record[12] and controlling case law from this Court, that warrants discretionary review pursuant to Rule 66.3(c).

The panel majority's refusal to acknowledge the State, and not the defense, prompted Castillo to volunteer Diles' nickname was "Mellow" because he was "just real laid back," creating the false impression, as the State conceded at oral argument, authorizing the admission of testimony that, *inter alia*, Diles physically abused Castillo. See **Renteria v. State**, 206 S.W.3d 689, 697 (Tex.Crim.App. 2006)(trial court erred sustaining State's relevancy objection to testimony on cross-examination from State's expert about defendant's remorse where expert left false impression with the jury that defendant had not exhibited any remorse); **Harrison v. State**, 241 S.W.3d 23, 27 (Tex.Crim.App. 2007)(State permitted to question

---

[12] That defense counsel first referred to Diles as "Mello" in her opening statement, **slip op.** at 41, is of no legal significance given the basic principle that opening statements are not evidence.

19

defense witnesses about defendant's assault convictions after defense created false impression he was a "good" and "sweet" person"). The panel majority's published opinion's treatment of this important and recurring issue sews the seeds of mischief in future cases, conflicts with **Harrison** and **Renteria**, and provides yet another reason why review is warranted.

## CONCLUSION

This case presents important and recurring issues impacting all six reasons for granting discretionary review.[13] Left unchecked, this published opinion erodes "the foundation upon which our system of the orderly administration of justice is structured," **State v. Terrazas**, 962 S.W.2d 38, 41 n. 2 (Tex.Crim.App. 1998), and flies in the face of the fundamental principle that trial courts "have an independent interest in ensuring ... that legal proceedings appear fair to all who observe them." **Bowen v. Carnes**, 343 S.W.3d 805, 816 (Tex.Crim.App. 2011)(orig. proceeding).

---

[13] The critical role the evidence the panel majority held that jurors did not need to hear plays in any murder case where self-defense is raised, was, ironically, acknowledged by the Fourteenth Court of Appeals, quoting an 1848 Georgia Supreme Court decision. "Has not the character of the deceased for violence, much to do in determining the reasonableness or unreasonableness of the fear under which the defendant claims to have acted? ... We apprehend that the imminence of the danger, as well as the chances of escape, will depend greatly upon the temper and disposition of our foe.... Who knowing the character of Kyd the pirate, or the infamous John A. Murrell, would not instantly, upon their approach armed with deadly weapons, act upon the presumption that robbery, or murder, or both were contemplated." **Fry v. State**, 915 S.W.2d 554, 560 n. 3 (Tex.App. – Houston [14th Dist.] 1995, no pet.).

20

## PRAYER FOR RELIEF

Appellant prays that this Court grant discretionary review, set this case for oral argument, and that the decision of the Fourteenth Court of Appeals be reversed, and the cause remanded to the trial court consistent with the relief sought in his petition for discretionary review.

RESPECTFULLY SUBMITTED,

/s/ **Brian W. Wice**

**BRIAN W. WICE**
440 Louisiana   Suite 900
Houston, Texas   77002-1635
(713) 524-9922   PHONE
(713) 236-7768   FAX
TBA No. 21417800
wicelaw@att.net
COUNSEL FOR APPELLANT
RODNEY WAYNE ALLEN

## CERTIFICATE OF SERVICE

Pursuant to TEX.R.APP.P. 9.5(d), this motion was served on Clinton Morgan, Harris County District Attorney's Office, 6th Floor, 1201 Franklin, Houston, Texas, 77002, and State Prosecuting Attorney, Lisa McMinn, by electronic filing on September 22, 2015.

/s/ **Brian W. Wice**

**BRIAN W.WICE**

21

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX.R.APP.P. 9.4(1)(i)(1), I certify that this document complies with the type-volume limitations of TEX.R.APP.P. 9.4(i)(2)(D):

1. Exclusive of the exempted portions set out in TEX.R.APP.P. 9.4(i)(1), this document contains 4,185 words.

2. This document was prepared in proportionally spaced typeface using Word Perfect 8.0 in Century 14 for text and Times New Roman 12 for footnotes.

/s/ Brian W. Wice

_____

BRIAN W. WICE

22

# APPENDIX

FOURTEENTH COURT OF APPEALS'S PUBLISHED OPINION

___ S.W.3D ___, 2015 WL 4718861

DELIVERED AUGUST 4, 2015

RECONSIDERATION EN BANC DENIED AUGUST 27, 2015

2015 WL 4718861
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
Houston (14th Dist.).

Rodney Wayne Allen, Appellant

v.

The State of Texas, Appellee

NO. 14–13–01030–CR |
Opinions filed August 4, 2015

On Appeal from the 262nd District Court, Harris County,
Texas, Trial Court Cause No. 1340129

**Attorneys and Law Firms**

Brian W. Wice and Adele O. Hedges, for Fredys Alberto
Cerritos.

Devon Anderson and Clinton Morgan, for The State Bar of
Texas.

Panel consists of Chief Justice Frost and Justices Boyce and
McCally.

**OPINION**

William J. Boyce, Justice

*1 The State indicted appellant Rodney Wayne Allen for the murder of Jonathan Diles,[1] and appellant pled not guilty. Appellant argued at trial that he acted in self-defense. A jury convicted appellant of murder, and the trial court assessed his punishment at 45 years' imprisonment. Appellant challenges his conviction on grounds that the trial court erred by (1) excluding testimony regarding Diles's character for violence and aggression; and (2) denying appellant's request that the State provide him with copies of offense reports in cases in which Diles was charged with crimes of violence. We affirm.

**BACKGROUND**

An altercation occurred between appellant and Diles, which ended in Diles's death. According to several witnesses, appellant punched a hole in Diles's apartment wall; Diles grabbed appellant by the neck; and Diles forced appellant to the outside patio. Appellant fatally shot Diles on the patio.

Appellant argues that the trial court's allegedly erroneous rulings prevented him from proving that he acted in self-defense when he shot Diles. Appellant does not pinpoint trial court rulings he considers to be in error, but agues his issues generally. The State contends that appellant has not preserved complaints regarding several trial court rulings. We summarize key witness testimony, attorney arguments, and party objections to place appellant's general contentions into context.

**I. The Motion in Limine**

The State filed a motion in limine before trial. The trial court granted the State's motion and instructed the parties and counsel not to allude to, refer to, or in any way bring before the jury any reference regarding Diles's prior criminal history, bad acts, or character without first approaching the bench.

**II. The First Day of Trial**

Appellant's trial counsel approached the bench before giving her opening statement. Counsel informed the trial court that appellant asserted self-defense as a justification for killing Diles. Counsel asked for permission to assert that the evidence would show appellant knew of Diles's violent nature, and that Diles had a violent past. Counsel argued that this evidence would explain appellant's apprehension of Diles and tend to show that Diles, rather than appellant, was the first aggressor in the altercation that led to Diles's death. Counsel specifically requested permission to assert that appellant knew (1) of Diles's prior convictions for assault and theft;[2] (2) that Diles was a member of the Crips, a violent street gang; and (3) that Diles was violent toward Sharon Castillo, Diles's girlfriend and an eyewitness to his death.[3] The trial court denied counsel's request with respect to appellant's knowledge of Diles's prior convictions and gang membership, but granted counsel's request with respect to appellant's knowledge of Diles's violence toward Castillo.

**\*2** The State gave an opening statement, and appellant's counsel followed. Appellant's counsel referred to Diles by his nickname, "Mellow," in her opening statement. The State then called the officer dispatched to the scene of Diles's death. The officer testified briefly, and court adjourned for the day.[4]

### III. The Second Day of Trial
Appellant's counsel approached the bench before the start of the second day of trial. Counsel requested copies of the offense reports "for [Diles's] prior acts of violence." She argued: "Specific acts of violence become relevant when the defense raises the issue of self-defense or first aggressor." The trial court refused counsel's request.

The State then called Castillo. Castillo testified that she had lived with Diles for five-and-a-half years and considered Diles to be her husband. The State questioned Castillo as follows:

> [THE STATE:] Now, while you were living with [Diles], what was y'all's relationship like?
>
> [CASTILLO:] We had our good days and our bad days.
>
> [THE STATE:] Tell me what you mean by that?
>
> [CASTILLO:] Because he had a drug problem.
>
> [THE STATE:] [Diles] had a drug problem?
>
> [CASTILLO:] Yes, ma'am, he did. Some days he would be okay, and then some days he wasn't.
>
> [THE STATE:] Do you know what kind of drugs he was using?
>
> [CASTILLO:] He was on crack cocaine.
>
> [THE STATE:] Did you see him use crack cocaine around you?
>
> [CASTILLO:] No, he would leave and stay gone for a couple of days and come home; and I'll [sic] know that's what he was out there doing. But he never did it around me or in my house.

The State later questioned Castillo as follows:

> [THE STATE:] Did [Diles] have a nickname at all?
>
> [CASTILLO:] Mellow.

> [THE STATE:] Mellow. Do you know how he got that nickname? [APPELLANT'S COUNSEL:] Objection, calls for speculation.
>
> THE COURT: You may answer if you know.
>
> [CASTILLO:] Me, ma'am?
>
> THE COURT: Yes.
>
> [CASTILLO:] Because he was just real laid back.

The State questioned Castillo regarding her relationship with appellant. Castillo testified that she met appellant "a while back" through her son. She testified that appellant was 23 years old at the time of trial, and that he is 18 years her junior. Castillo stated that she considered appellant to be a son, and that appellant called her "Mama" and called Diles "Pops."

Castillo testified that, on March 11, 2012,[5] she entertained Julia Jones at her apartment. Diles and two others, Roderick Brown and Shay McBride, arrived at the apartment by that evening. According to Castillo, appellant called her for a ride to the apartment. Castillo borrowed a car, picked up appellant, and returned with appellant to her apartment. Castillo testified that appellant brought a gun.

According to Castillo, Jones went to the bathroom to do her hair at some point in the evening. Appellant joined Jones in the bathroom, and the two began to argue. Jones and appellant left the bathroom once and returned. They then left the bathroom a second time. Both were upset.

**\*3** Jones and appellant entered the living room where Castillo, Diles, Brown, and McBride were sitting. According to Castillo, appellant stated that he wanted to leave. He then punched a hole in the wall. Diles rose from the couch and told appellant to calm down. Appellant and Jones continued to argue. Diles then grabbed appellant "in a full nelson,"[6] and told appellant that he would let him go when he calmed down. The apartment door leading to the patio was open. Diles walked appellant outside to the patio while holding him.

According to Castillo, Jones then grabbed her keys, exited the apartment, and walked toward the parking lot. Diles released appellant after Jones had walked past. Appellant turned once he was released, "like he was fixin' to run towards [Jones.] [T]hat's when [Diles] grabbed [appellant]." Castillo testified that Diles grabbed the back of appellant's shirt. She stated

that, after Diles grabbed appellant's shirt, appellant pulled out a gun and shot Diles in the head. Castillo stood next to Diles. She stated that appellant looked at her immediately after shooting Diles and ran away. Castillo testified that Diles did not have a gun and never attempted to hurt appellant.

Appellant's counsel cross-examined Castillo about her relationship with Diles as follows:

> [APPELLANT'S COUNSEL:] Now, let's talk a little bit about some of the statements that you've made. Today you told the jury that you and [Diles] knew each other for five and a half years?
>
> [CASTILLO:] Correct.
>
> [APPELLANT'S COUNSEL:] And that you guys had your problems, your good days and your bad days?
>
> [CASTILLO:] Correct.
>
> [APPELLANT'S COUNSEL:] What do you mean by that?
>
> [CASTILLO:] Like all couples have good days and bad days. You fight sometimes, you argue. You argue and fuss and fight, and sometimes it's good and sometimes it's not good. With us it was bad because he was battling an addiction.
>
> [APPELLANT'S COUNSEL:] And when you fought, he would get physical with you, wouldn't he?
>
> [CASTILLO:] No, ma'am.
>
> [APPELLANT'S COUNSEL:] It is your testimony here today that [Diles], you're telling this jury, that [Diles] was never physical with you; is that your testimony to this jury today?
>
> [CASTILLO:] If you want to call pushing, yeah, we pushed each other around. As far as black eyes, punching, kicking, no.
>
> [APPELLANT'S COUNSEL:] So, your testimony now is that you would get physical in that you would—he would push you and you would push him back?
>
> [CASTILLO:] Yes.
>
> [APPELLANT'S COUNSEL:] Is it your testimony that it never got worse than that?
>
> [CASTILLO:] Yes.

The court called the attorneys to the bench immediately after this exchange. There, the following conference ensued:

> THE COURT: All right. And perhaps there was—maybe you misconstrued my ruling. Just so that we're clear, we talked about opening statements, and we talked about the fact that there may come a time when reputation testimony could become admissible in regards to [appellant's] knowledge of [Diles's] reputation.
>
> [APPELLANT'S COUNSEL]: Right.
>
> THE COURT: At this time, I have not ruled on [whether] extraneous bad acts on the part of [Diles] are admissible for character conformity or anything else. They're clearly not relevant to prove character conformity, and I haven't ruled that they're admissible for any other purpose. I have granted the [m]otion in [l]imine. While I gave you some latitude in opening statement, now I have not determined this evidence to be admissible; and it's not admissible at this time.
>
> *4 [APPELLANT'S COUNSEL]: Okay. I was responding to—on direct examination, she said that they had their good days and bad days.
>
> THE COURT: And she answered that question.
>
> [APPELLANT'S COUNSEL]: And the reason for my questioning at this point was because that answer mislead the jury to make it sound like—
>
> THE COURT: I'm not going to allow you to, I guess, there was a [m]otion in [l]imine regarding that. It is still in effect.

Appellant's counsel continued her cross-examination. Counsel asked Castillo about purported inconsistencies in her statement to police given on March 11, 2012. Counsel referred to Diles as "Mellow" during this exchange. Counsel asked Castillo: "Isn't it true that you stated [to police] that at that time that Mellow grabbed [appellant]?" Castillo responded: "He grabbed him before [Jones] walked outside."

### IV. The Third Day of Trial

Castillo's cross-examination carried over into the third day of trial. The prosecutor and appellant's counsel approached the bench before trial resumed. Appellant's counsel asked the court to admit evidence of Diles's character to rebut Castillo's testimony that Diles was nicknamed "Mellow" and was a "laid-back individual." Appellant's counsel argued

that Castillo's testimony "should have opened the door for rebuttal character evidence." Appellant's counsel did not specify the rebuttal evidence she wished to introduce. The trial court denied counsel's request. Appellant then finished cross-examining Castillo.

The State next called Alfonso Pineda, who lived above Diles's and Castillo's apartment. Pineda testified through an interpreter that he woke up at about 5:00 a.m. on March 11, 2012, because he heard screaming outside his apartment. Pineda opened his window and saw two men and a woman arguing. Pineda testified:

> They were arguing and the guy, the aggressor, was next to the wall. They were arguing; I don't know why, and the man who died withdrew from them. So, the other guy moved from where the lady was, and he encountered the other one. And so he also walked around and left. And then the other man also got out and he yelled at him, the one who died, he said, 'What the hell, n——,' that's all I heard. And then he came back and he pulled out the pistol and shot at him.

Pineda testified on cross-examination that, at one point, he lost sight of the shooter. Pineda then saw the shooter come back, stand in front of Diles, pull out a gun, and fire. Appellant's counsel asked Pineda: "[P]rior to this shooting, it is your testimony that neither one of them touched each other?" Pineda answered: "There were not any blows. The lady was the one who was pushing the guy, but I don't know why."

The State next called Brown. Brown testified that he was at Castillo's and Diles's apartment on March 11, 2012. Brown identified Diles in a photograph stating "[t]hat's Mellow, I only know him by nickname." Brown referred to Diles as "Mellow" throughout the examination.

Brown testified that appellant argued with someone on the phone while appellant was at the apartment. According to Brown, appellant became distraught and punched the apartment wall. Diles then grabbed appellant from behind and forced him outside. Brown stated that Diles "had [appellant] around his neck, like grabbed him from behind." According to Brown, appellant "was asking [Diles] why are you handling me this rough?" Brown demonstrated the hold Diles used

on appellant. Brown called the hold "a full nelson." Brown testified that he stayed inside the apartment after Diles removed appellant. Brown heard two gunshots. He then exited the apartment and saw Diles lying dead outside.

*5 The State called Dr. Moma Gounsolin, who performed the autopsy on Diles's body on March 12, 2012. Dr. Gounsolin testified that Diles died of a gunshot wound to the head. The trial court admitted Dr. Gounsolin's autopsy report into evidence. The report states that the word "CRIMINAL" is tattooed on Diles's left forearm, and the words "MIND OF A GANGSTA" are tattooed on his right hand. The autopsy report lists trace amounts of cocaine, cocaine metabolites, and ethanol found in Diles's blood.

Appellant's counsel approached the bench before Dr. Gounsolin's cross-examination. Counsel asked the court for permission to question Dr. Gounsolin about Diles's tattoos. The trial court denied counsel's request, stating: "[The motion in limine] remains in effect."

The State rested. The State and appellant's counsel approached the bench. Appellant's counsel asked the court for permission to call a witness the next day who would testify that Castillo told the witness a different version of events. The trial court stated that it would allow the witness to testify regarding Castillo's inconsistent statements. Appellant's counsel told the court that the witness also had personal knowledge that Diles abused Castillo and that Diles smoked crack in the apartment he shared with Castillo. Appellant's counsel asked the court for permission to question the witness about Diles's abuse and drug use at the apartment. The trial court denied counsel's request, stating that the extraneous acts were irrelevant and, even if relevant, they were unfairly prejudicial. The court adjourned for the day.

## V. The Fourth Day of Trial
Appellant testified on the fourth day of trial. Appellant's counsel questioned appellant as follows:

[APPELLANT'S COUNSEL:] Why did you fire those shots on March 11th, 2012?

[APPELLANT:] I was scared for my life.

[APPELLANT'S COUNSEL:] Why were you scared for your live [sic]?

[APPELLANT:] Because [Diles] was choking me. He was choking me, and he wouldn't let me go, and he reached for my gun.

On cross-examination, appellant testified that he brought a gun to Diles's and Castillo's apartment. He testified that he punched the apartment wall twice. He stated that Diles then grabbed him around the neck with his arm. Appellant asked Diles to let him go. According to appellant, he was unable to speak. He testified that he could not breathe and that he tried to get loose from Diles. Appellant and Diles then "started to tussle." At some point, the struggle moved outside. Neither man was on his feet. Appellant testified: "When I kind of got loose from [Diles], he reached for my gun." Appellant could not remember how he got loose from Diles. Appellant stated: "I shot the gun when [Diles] let—when I was trying to get away from him, I shot the gun when I was able to grab it." Diles then released appellant, and appellant fled the scene.

Appellant testified on redirect that, after he punched the wall, Diles came from the back of the apartment to the living room. Appellant testified: "[Diles] grabbed me around my neck. He didn't even say anything to me. He just immediately grabbed me." Appellant demonstrated the grasp to the jury. Appellant's counsel asked appellant: "What is the reason that you shot Jonathan [Diles] that night?" Appellant responded: "He reached to grab for my gun."

Appellant's counsel then approached the bench, where the following conference ensued:

> [APPELLANT'S COUNSEL:] We have now clearly raised the issue of self-defense. I would ask that now I be able to go into the relationship between the parties and what they knew in regards to—
>
> *6 THE COURT: Between the Defendant and the victim?
>
> [APPELLANT'S COUNSEL:] Yes.
>
> THE COURT: Any extraneouses?
>
> [APPELLANT'S COUNSEL:] No. So, what about the personal knowledge of the victim's opinion and character?
>
> THE COURT: At this point, based on the evidence that has been raised, if you want to talk about the Defendant's relationship with the victim, you may do that.

Appellant's counsel then asked appellant if he had a prior relationship with Diles. Appellant answered: "Yes." Counsel asked appellant if he knew Diles "to be a Crip." The State objected. The court called the parties to the bench and stated that appellant's counsel had violated the motion in limine by asking appellant whether he knew Diles to be a Crip. Appellant's counsel responded:

> You stated to me that the prior relationship between [appellant] and [Diles] I can go into. The prior relationship between them is that there would be several times that [Castillo] would be abused by [Diles]. He would —[Castillo] would call [appellant] to come over there to protect her. [Appellant] would come. When he would get there, [Diles] would—there would be other Crips outside. He would act as though, you know, what are you here for, this, that and the other. And so the prior relationship between the parties is that he knew that he was a Crip. He knew that he was a *[sic]* abusive. He knew that he would have to come over there and protect [Castillo]. That's the relationship that he knew, which formed his basis for his opinion and his state of mind at the time he pulled the trigger.

The court responded that it would not allow testimony regarding Diles's alleged gang membership and Diles's relationship with Castillo. The court determined that the prejudicial effect of the proposed testimony outweighed its relevance, if any.

Appellant's counsel objected on the record. She asserted that the proposed testimony regarding "the prior specific acts of violence" should be admissible to explain appellant's defensive state of mind when he shot the gun. Additionally, counsel asserted that the proposed testimony would explain Diles's "ambiguously aggressive" conduct. Appellant's counsel stated: "[I]t's ambiguous as to exactly what the purpose was for [Diles] grabbing [appellant] and what manner that [Diles] grabbed him."

The trial court again refused appellant's request to elicit testimony regarding Diles's specific bad acts. The court stated: "It is unambiguous with regards [to appellant's] recitation of how this offense occurred. Therefore, I find that the specific bad acts that you are attempting to elicit do

nothing other than to attempt to show character conformity on the part of [Diles]."

The State reexamined appellant. Appellant testified: "The only reason I even attempted to grab [the gun] is because he reached for it."

Appellant's counsel next called Castillo's half-sister, Creola Borner. Borner testified that, in late March or April 2012, Castillo visited Borner and told her about the night Diles died. According to Borner, Castillo stated that appellant and Diles were fighting and that "Mellow had [appellant] from behind and he was trying to get to his gun and [appellant] had got to it first."

*7 Appellant's counsel approached the bench after Borner testified. Counsel again requested that the court admit testimony regarding Diles's character and reputation because appellant had raised the issue of self-defense. The court denied counsel's request.

Appellant's counsel made an offer of proof before closing arguments.[7] She stated:

> If [appellant was] allowed to bring in the opinion and reputation character of [Diles], [appellant] would have testified to the fact that he knew that [Diles] was a Crip. Also ... we would have, the autopsy report that was entered into evidence, we would have highlighted for the jury the fact that he had Crip tattoos on his body.... [Appellant] would testify to the fact that on numerous occasions [Castillo] called him to pick her up after [Diles] had abused her, blackened her eye, bruised her as well as beat her up and pulled out her hair. [Borner] ... would have testified to the fact that she personally, while living with [Diles] and [Castillo] personally witnessed [Diles] in a very violent nature abuse [Castillo] ... drag her downstairs, that when they would try to take him off of her that he would pull patches of hair out of her head such that now she has to wear a wig and that she witnessed, in fact, where [Castillo] would call

[appellant] to come pick her up after being abused by [Diles], Also ... there was testimony elicited by [Castillo] that stated she has never witnessed [Diles] smoke crack in her home. I would have impeached that statement because when [Borner] lived with [Castillo] and [Diles] she testified she and [Castillo] personally witnessed [Diles] smoke crack in their home. In addition to that, [Castillo] also stated ... that their relationship was a good relationship. They had their good days and bad days, and the most they ever did was push each other. I could have impeached her with that same evidence in regards to the violent nature and the violence that occurred between the two of them had I been able to offer the witness—through this evidence through [appellant] as well as [Borber].

The parties presented closing argument on the fourth day of trial. The court instructed the jury on the law, including the law of self-defense. Appellant's counsel argued during her closing argument that appellant was justified in killing Diles because he acted in self-defense. Counsel argued: "When you grab a man in the fashion that ... [Diles] grabbed [appellant], your intentions are clear. He wasn't punching holes in the wall at that time, so the only reason that he grabbed him at that point was to harm him." Counsel stated: "No witness told you that [appellant] was starting to beat [Diles] up. No witness told you that he was trying to harm him, only that he was trying to get away." Counsel argued that appellant shot Diles because Diles went for appellant's gun during their struggle. Counsel asserted: "[Appellant] thought that if [Diles] got the weapon before he did that [Diles] was going to go ahead and finish it off."

*8 The State argued that appellant's version of events was not credible. The State urged the jury to accept Castillo's and Pineda's versions of events, which described appellant shooting Diles at a close range while standing, and not while struggling with Diles. The State argued that Castillo's and Pineda's testimony established that appellant was not acting in self-defense when he shot Diles.

The jury found appellant guilty of murder, and the trial court assessed appellant's punishment at 45 years' imprisonment. Appellant timely appealed.

## EXCLUSION OF EVIDENCE

In his first three issues, appellant contends that the trial court abused its discretion by excluding testimony regarding (1) Diles's "repeated physical abuse of" Castillo; (2) Diles's "prior convictions for the offenses of robbery and assault;" and (3) appellant's knowledge "that [Diles] was a member of the Crips, a violent street gang." Appellant's three issues are each tied to a category of excluded evidence. Appellant argues his three issues together. Appellant argues that the trial court abused its discretion by excluding the evidence because the evidence was admissible (1) to support his theory of self-defense; (2) to test Castillo's credibility; and (3) to rebut a false impression of Diles's peaceable character. Additionally, appellant argues that the excluded evidence was not unfairly prejudicial or otherwise subject to exclusion pursuant to Texas Rule of Evidence 403.

Appellant contends that reversal is warranted because the trial court's evidentiary errors deprived him of his constitutional right to present a complete defense. *See* Tex.R.App. P. 44.2(a).[8] Alternatively, appellant argues that the trial court's errors affected his substantial rights. *See* Tex.R.App. P. 44.2(b).

The State counters appellant's arguments on an issue by issue basis, examining each category of excluded evidence. The State argues that the trial court acted within its discretion when it excluded testimony relating to Diles's treatment of Castillo and appellant's knowledge of Diles's gang membership. The State argues that this evidence was irrelevant and would have shown only that Diles acted in conformity with a violent character. The State also argues that appellant did not preserve error with respect to testimony regarding Diles's prior convictions for assault and robbery.

We first discuss whether appellant preserved error regarding evidence of Diles's prior convictions; we hold that he did not and overrule issue two.

**\*9** We then address, in turn, appellant's arguments that testimony regarding Diles's treatment of Castillo and gang membership was admissible (1) to support his theory of self-defense; (2) to test Castillo's credibility; or (3) to

rebut a false impression of Diles's peaceable character. We determine that the excluded testimony was not admissible under appellant's theories, was properly excluded at the trial court's discretion, or that a complaint of exclusion under the argued theory of admissibility was not preserved for appeal. *See* Tex.R.App. P. 33.1; *Reyna v. State*, 168 S.W.3d 173, 177 (Tex.Crim.App.2005) ("[I]t is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible."). We overrule issues one and three.[9]

### I. Error Preservation at Trial

In his second issue, appellant contends that the trial court erred in excluding testimony regarding Diles's prior convictions for assault and robbery. The State argues that appellant did not preserve error regarding issue two because appellant never attempted to introduce evidence of Diles's convictions at trial and the trial court never ruled on the admissibility of such evidence. Appellant points to two locations in the record that, he asserts, establish preservation of error at trial. We consider the locations in turn.

### A. The Bench Conference before Opening Statements

Appellant asserts that, during the bench conference before opening statements, his counsel requested permission to elicit evidence regarding appellant's knowledge of Diles's prior convictions. Appellant argues that his counsel's request, made outside the presence of the jury, preserved error. *See* Tex.R. Evid. 103(a)(1), 60 Tex. B.J. 1130 (1998, superseded 2015) ("When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections.").[10]

At the bench conference, the parties and the court discussed the State's motion in limine and which subjects the court would allow appellant's counsel to discuss during her opening statement. Appellant's counsel asserted that she anticipated the evidence at trial would show that appellant knew that Diles previously had been convicted for assault and theft. Counsel requested that she be allowed to assert appellant's knowledge of Diles's convictions during her opening statement. The State opposed counsel's request, stating: "I believe that it will be premature to go into [Diles's] past without seeing the testimony develop." The trial court ruled: "For purposes of opening statements, I am going to

grant the State's [m]otion in [l]imine with regards to the prior convictions of [Diles] ... along with the information regarding [Diles's] gang affiliation." Additionally, the court prohibited appellant's counsel from asserting during opening that appellant had knowledge of Diles's prior convictions.

Appellant's counsel asked the court: "[J]ust so that I'm clear, we can't bring up the fact that [appellant] knew that [Diles] was a Crip." The court responded: "[A]bsent additional information that may or may not be developed during the trial, that's correct. Since I haven't ruled on the admissibility of that evidence, then at this point I'm not going to allow you to talk to the jury about it." Appellant's counsel did not request clarification regarding the court's ruling prohibiting her from asserting appellant's knowledge of Diles's prior convictions.

**\*10** Texas Rule of Appellate Procedure 33.1(a)(1) provides that, to preserve error for appellate review, a party must object in the trial court and state "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." While no "hyper-technical or formalistic use of words or phrases" is required in order for an objection to preserve error, the objecting party nonetheless must " 'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.' " *Pena v. State*, 285 S.W.3d 459, 464 (Tex.Crim.App.2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex.Crim.App.1992)). Rule 33.1 also requires that the trial court rule on the request, objection, or motion, either expressly or implicitly, or refuse to rule on the request, objection, or motion, and the complaining party to have objected to the refusal. Tex.R.App. P. 33.1(a)(2).

On this record, we determine that, during the bench conference prior to opening statements, appellant did not request or receive a ruling on the admissibility of testimony regarding Diles's prior convictions for assault and robbery. Appellant's counsel argued against the State's motion in limine. She further requested that she be allowed to assert appellant's knowledge of Diles's criminal convictions during her opening statement. The trial court denied counsel's request. *See Norton v. State*, 564 S.W.2d 714, 718 (Tex.Crim.App. [Panel Op.] 1978) (the character and extent of a defendant's opening statement are subject to the control of the trial court). The trial court did not clarify its ruling with respect to Diles's prior convictions; however, it stated,

with respect to its ruling prohibiting counsel from discussing Diles's gang membership: "I haven't ruled on the admissibility of that evidence."

We hold that appellant did not preserve error regarding the admissibility of testimony as to Diles's prior convictions because appellant's counsel did not request or receive a ruling on the admissibility of such testimony at the bench conference prior to opening statements. *See* Tex.R.App. P. 33.1; *cf. Warner v. State*, 969 S.W.2d 1, 2 (Tex.Crim.App.1998) ("[W]e have held that a ruling on a State's motion in limine that excludes defense evidence is subject to reconsideration throughout trial and that to preserve error an offer of the evidence must be made at trial.").

### B. Appellant's Redirect Examination

Appellant directs our attention to a second location in the record where he asserts that his counsel preserved error. The record from the fourth day of trial shows the following exchange during appellant's redirect examination:

[APPELLANT'S COUNSEL:] Did you have a prior relationship with [Diles]?

[APPELLANT:] Yes, ma'am.

[APPELLANT'S COUNSEL:] Did you know him to be a Crip?

[APPELLANT:] Yes, ma'am.

[THE STATE]: Your Honor, I would object.

Appellant's counsel and the State approached the bench. The trial court stated that appellant's counsel had violated the motion in limine. Appellant's counsel requested permission to elicit testimony regarding Diles's "prior specific acts of violence" to explain appellant's state of mind at the time he shot Diles and to clarify whether appellant or Diles was the first aggressor. Counsel argued for the admissibility of testimony regarding Diles's gang membership and violence toward Castillo; counsel did not ask permission to question appellant regarding Diles's criminal convictions. The trial court denied counsel's request.

In addition to Texas Rule of Appellate Procedure 33.1, the complaining party must comply with Texas Rule of Evidence 103(a)(2) to preserve error regarding a trial court's decision to exclude evidence. This rule requires making an "offer of proof," unless the substance of the evidence

was apparent from the context within which questions were asked. Tex.R. Evid. 103(a)(2), 60 Tex. B.J. 1130 (1998, superseded 2015); *see Mays v. State,* 285 S.W.3d 884, 889 (Tex.Crim.App.2009); *see also* Tex.R.App. P. 33.1; *Martinez v. State,* 91 S.W.3d 331, 336 (Tex.Crim.App.2002) (Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103 require the party complaining on appeal about a trial court's exclusion of evidence to "have done everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question.") (internal quotations and brackets omitted). Texas Rule of Evidence 103(a)(2) provides: "Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." "The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form." *Mays,* 285 S.W.3d at 889. If the offer of proof is made in the form of a statement, the proffer, " 'must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible.' " *Id.* at 890 (quoting *Warner,* 969 S.W.2d at 2).

*11 The record shows that appellant's counsel made an offer of proof by summarizing testimony that she wished to elicit from appellant as to Diles's physical abuse of Castillo and Diles's gang membership. Counsel did not make an offer of proof as to Diles's prior criminal convictions. It is not apparent from counsel's questions to appellant, before the bench conference, that counsel intended to question appellant regarding Diles's criminal history.

We hold that appellant did not preserve a complaint regarding the exclusion of evidence as to Diles's prior criminal convictions because appellant did not make an offer of proof regarding such testimony and the substance of the testimony was not otherwise apparent from the context of appellant's redirect examination. *See* Tex.R. Evid. 103(a)(2); *Warner,* 969 S.W.2d at 2; *see also* Tex.R.App. P. 33.1(a); *Leyba v. State,* 416 S.W.3d 563, 574–75 (Tex.App.–Houston [14th Dist.] 2013, pet. ref'd) (defendant in a murder case did not preserve error regarding the exclusion of victim's criminal history because defendant did not request a specific ruling regarding the admissibility of victim's criminal history and defendant did not attempt to introduce evidence of victim's criminal history during trial).

Appellant does not argue that additional locations in the record establish preservation, and we have found no instance of error preservation during our independent review of the record. We hold that appellant failed to preserve error regarding the trial court's exclusion of testimony as to Diles's prior convictions for assault and robbery. We overrule appellant's second issue.

## II. Admissibility of Evidence

Appellant contends that the trial court erred in excluding evidence regarding Diles's physical abuse of Castillo (issue one) and appellant's knowledge of Diles's gang membership (issue three). Appellant asserts three theories under which he contends this evidence should have been admissible: (1) to support appellant's theory of self-defense; (2) to test Castillo's credibility; and (3) to rebut a false impression of Diles's peaceable character. We state the applicable standard of review and then address appellant's theories of admissibility in turn.

### A. Standard of Review

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App.2002). We will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *See id.* We uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *See Willover v. State,* 70 S.W.3d 841, 845 (Tex.Crim.App.2002). Additionally, we must review the trial court's ruling in light of what was before the court at the time the ruling was made. *See id.*

### B. Self–Defense

In general, evidence of a person's character may not be used to prove that the person "behaved in a particular way at a given time." *Tate v. State,* 981 S.W.2d 189, 192 (Tex.Crim.App.1998); *see* Tex.R. Evid. 404(a), 60 Tex. B.J. 1134 (1998, superseded 2015). However, this limit on character evidence is not absolute. Texas Rule of Evidence 404(a)(2) provides that a defendant in a homicide prosecution who raises the issue of self-defense may introduce evidence of the victim's character trait for violence to demonstrate that the victim was, in fact, the first aggressor. Tex.R. Evid. 404(a)(2), 60 Tex. B.J. 1134 (1998, superseded 2015); *see Ex parte Miller,* 330 S.W.3d 610, 619 (Tex.Crim.App.2009);

*Torres,* 71 S.W.3d at 760.[11] A witness may testify about a victim's violent character only through reputation and opinion testimony under Rule 405(a). *See* Tex.R. Evid. 405(a), 60 Tex. B.J. 1134 (1998, superseded 2015); *Ex parte Miller,* 330 S.W.3d at 619.[12]

**\*12** A defendant also may introduce evidence under Rule 404(b) of a "victim's prior specific acts of violence when offered for a non-character purpose—such as his specific intent, motive for an attack on the defendant, or hostility—in the particular case." *Ex parte Miller,* 330 S.W.3d at 620; *see* Tex.R. Evid. 404(b), 60 Tex. B.J. 1134 (1998, superseded 2015). "As long as the proffered violent acts explain the outward aggressive conduct of the deceased at the time of the killing, and in a manner other than demonstrating character conformity only, prior specific acts of violence may be admitted even though those acts were not directed against the defendant." *Torres,* 71 S.W.3d at 762. "The proper predicate for the specific violent prior act by the deceased is some act of aggression that *tends* to raise the issue of self-defense, which the violent act may then help clarify." *Torres v. State,* 117 S.W.3d 891, 895 (Tex.Crim.App.2003) (emphasis in the original).

Finally, a defendant may offer reputation or opinion testimony or evidence of specific prior acts of violence by the victim to show the "reasonableness of [the] defendant's claim of apprehension of danger" from the victim. *Ex parte Miller,* 330 S.W.3d at 618. This purpose invokes Rule 404(b) because the evidence is offered to show the defendant's own self-defensive state of mind and the reasonableness of that state of mind. *Id.* at 618–19; *Mozon v. State,* 991 S.W.2d 841, 846 (Tex.Crim.App.1999). The defendant must show that he was aware of the victim's specific acts for the evidence to be admissible for this purpose. *Torres,* 71 S.W.3d at 760 n.4.[13]

Appellant argues that he was entitled to introduce evidence of "Diles'[s] character for violence via the specific acts he proffered" to explain Diles's "ambiguous conduct in grabbing Appellant by the neck." According to appellant, the evidence of Diles's prior bad acts was probative of whether appellant or Diles was the first aggressor. Additionally, appellant asserts that he offered the evidence to prove "his own self-defensive state of mind and the reasonableness of that state of mind."

Appellant does not specify how each of the proffered acts contributes to his theory of self-defense, nor does appellant analyze the trial court's rulings in light of what was before the court at the time the ruling was made. *See Willover,*

70 S.W.3d at 845; *Hoyos v. State,* 982 S.W.2d 419, 422 (Tex.Crim.App.1998) ("In determining the validity of a trial court's decision to exclude evidence, we examine the record as it appeared at the time of the trial court's ruling.").

We first address whether the trial court abused its discretion in excluding the proffered evidence to show whether appellant or Diles was the first aggressor. We examine admissibility as it relates to first aggressor under Rules 404(a)(2) and 405, and then we examine the issue under Rule 404(b). After considering admissibility as it relates to first aggressor, we turn to consider whether the trial court abused its discretion under Rule 404(b) by excluding the evidence as offered to show appellant's apprehension of danger from Diles.

### 1. First aggressor

Appellant asserts that Diles's intent in grabbing appellant by the neck was inherently ambiguous because appellant's testimony that Diles grabbed him in a harmful manner contradicted Castillo's and Brown's testimony that Diles grabbed appellant to control his outburst and to calm him down. Appellant argues that this ambiguity placed in question whether Diles or appellant was the first aggressor.

**\*13** We assume without deciding that the issue of first aggressor was legitimately in dispute.[14]

We determine that the trial court did not abuse its discretion in excluding the proffered evidence when the evidence was offered to show Diles's character trait for violence. A defendant who raises the issue of self-defense may introduce evidence of a victim's character trait for violence pursuant to Rule 404(a)(2) to show that the victim was, in fact, the first aggressor, but the defendant may do so only through reputation and opinion testimony under Rule 405(a). *See* Tex.R. Evid. 404(a)(2), 405(a); *Ex parte Miller,* 330 S.W.3d at 619. Testimony regarding Diles's alleged physical abuse of Castillo (issue one) and testimony that appellant knew that Diles was a member of the Crips (issue three) is not reputation or opinion testimony. *Cf. Tibbs v. State,* 125 S.W.3d 84, 89 (Tex.App.–Houston [14th Dist.] 2003, pet. ref'd) (gang membership evidence may be admissible under Rule 404(b) to show bias, motive, intent, or to refute a defensive theory).[15]

We also determine that the trial court did not err in excluding the proffered evidence when offered to establish Diles's status

as first aggressor through specific instances of past conduct. Under Rule 404(b), a victim's prior acts of violence also may be admissible to clarify the issue of first aggressor if the proffered act explains the victim's ambiguously aggressive conduct. *See Torres,* 117 S.W.3d at 895; *Torres,* 71 S.W.3d at 762. The victim's prior act may be admissible to explain, among other things, the victim's specific intent, motive, or hostility in a particular case. *See* Tex.R. Evid. 404(b); *Ex parte Miller,* 330 S.W.3d at 620; *see, e.g., Torres,* 117 S.W.3d at 896–97 (defendant was entitled to offer evidence that, several days before he shot victim, victim had climbed through his ex-girlfriend's aunt's window and threatened the aunt and her children; this evidence was relevant to show that victim had a specific motive or intent to be the first aggressor when he climbed through his ex-girlfriend's window several days later and defendant shot him); *Tate,* 981 S.W.2d at 193 (evidence that victim stated to defendant's aunt, several months prior to his death, that he would kill defendant was admissible to show victim's state of mind on the night he arrived at defendant's home and defendant stabbed him).[16]

**\*14** Appellant has not explained how the proffered evidence of Diles's physical abuse of Castillo and appellant's knowledge of Diles's gang membership explain Diles's aggressive conduct, and in a manner other than one that only demonstrates character conformity. *See Torres,* 71 S.W.3d at 761–62.[17]

Appellant's trial counsel proffered the following statement at the bench conference during appellant's redirect examination:

> "The prior relationship between [appellant and Diles] is that there would be several times that [Castillo] would be abused by [Diles]. He would — [Castillo] would call [appellant] to come over there to protect her. [Appellant] would come. When he would get there, [Diles] would — there would be other Crips outside. He would act as though, you know, what are you here for, this, that and the other. And so the prior relationship between the parties is that he knew that he was a Crip. He knew that he was a *[sic]* abusive. He knew that he would have to come over there and protect [Castillo]. That's the relationship that he knew, which formed his basis for

his opinion and his state of mind at the time he pulled the trigger.

Appellant's trial counsel later asserted that the proffered evidence clarified Diles's ambiguous purpose and manner in grabbing appellant. Counsel did not assert that Diles had any ill will toward appellant for responding to Castillo's calls for help, nor did counsel otherwise connect the proffered evidence of Diles's physical abuse of Castillo and appellant's knowledge of Diles's gang membership to Diles's state of mind.

On this record, we hold that the trial court acted within its discretion in excluding evidence of Diles's physical abuse of Castillo (issue one) and of appellant's knowledge that Diles was a member of the Crips (issue three), when offered to establish Diles's status as first aggressor through specific instances of past conduct, because appellant did not establish that the proffered evidence clarified whether appellant or Diles was the first aggressor, and did so in a manner other than demonstrating Diles's conformity with a violent character only. *See* Tex.R. Evid. 404(b); *Torres,* 71 S.W.3d at 762; *Hayes v. State,* 124 S.W.3d 781, 786 (Tex.App.–Houston [1st Dist.] 2003), *aff'd,* 161 S.W.3d 507 (Tex.Crim.App.2005) (trial court properly excluded evidence that victim confronted an individual with a gun after being insulted because there was no evidence that victim insulted defendant or that victim had any animosity toward defendant).

### 2. Appellant's apprehension of danger

**\*15** A murder defendant arguing self-defense also may offer evidence, pursuant to Rule 404(b), that he was aware of the victim's specific acts of violence to show the defendant's reasonable apprehension of danger from the victim. *See* Tex.R. Evid. 404(b); *Ex parte Miller,* 330 S.W.3d at 618; *Torres,* 71 S.W.3d at 760 n.4; *Thompson v. State,* 659 S.W.2d 649, 653 (Tex.Crim.App.1983), *superseded by rule,* Tex.R. Evid. 404, *as recognized in Mozon,* 991 S.W.2d at 845–46.

The Texas Penal Code provides, with certain exceptions: "[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *See* Tex. Penal Code Ann. § 9.31(a) (Vernon 2011). Deadly force in self-defense is justified when a person is justified in using force pursuant to section 9.31 and "the actor reasonably believes the

deadly force is immediately necessary ... to protect the actor against the other's use or attempted use of unlawful deadly force; or ... to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery." *Id.* § 9.32 (Vernon 2011).

Appellant testified that he feared for his life when Diles was choking him. Appellant stated that he could not breathe. Appellant's counsel asked appellant: "What is the reason that you shot Jonathan [Diles] that night?" Appellant responded: "He reached to grab for my gun." During cross-examination, appellant stated: "The only reason I even attempted to grab [the gun] is because [Diles] reached for it." Diles's autopsy report lists trace amounts of cocaine, cocaine metabolites, and ethanol found in Diles's blood after his death. According to the toxicologist who was called by appellant, the levels of cocaine and cocaine metabolites in Diles's blood indicated "binge-style" cocaine use over many hours immediately before his death; the ethanol level in Diles's blood indicated alcohol intoxication at a level over twice the legal limit. At these levels, a person would be influenced by the substances to "lower inhibitions," "make rash decisions," and "be more in an agitated state."

"A trial court is within its discretion to exclude prior violent acts if the victim's conduct was plainly aggressive and no explanation is necessary to show that the defendant reasonably feared for his life." *Smith v. State,* 355 S.W.3d 138, 150–51 (Tex.App.–Houston [1st Dist.] 2011, pet. ref'd) (citing *Torres,* 71 S.W.3d at 762). Diles's autopsy report suggests that Diles was significantly intoxicated when he grabbed appellant; he may have experienced lowered inhibitions, made rash decisions, and been in an agitated state. Appellant's description of Diles's conduct in grabbing appellant around the neck without saying anything, choking appellant until he could not breathe, and reaching for appellant's gun approaches conduct that was unambiguously aggressive. If Diles's conduct was unambiguously aggressive and needs no explanation to show appellant's reasonable fear for his life, then the trial court arguably acted within its discretion in excluding the proffered evidence because it was irrelevant apart from its tendency to show Diles's conformity with a violent character. *See* Tex.R. Evid. 404(b); *Ex parte Miller,* 330 S.W.3d at 618–19; *Mozon,* 991 S.W.2d at 846; *Smith,* 355 S.W.3d at 150–51 (trial court acted within its discretion to exclude evidence that defendant knew appellant had previously stabbed another individual because victim's acts, as testified to by defendant, of pulling a knife

and stabbing defendant were unambiguously aggressive and needed no explanation to show that defendant reasonably feared for his life); *London v. State,* 325 S.W.3d 197, 206 (Tex.App.–Dallas 2008, pet. ref d) (trial court acted within its discretion to exclude evidence of victim's gang affiliation and terrorization of neighborhood because victim's unambiguously aggressive act, as testified to by defendant, of shooting at defendant's car needed no explanation and because the proffered evidence did nothing more than show victim's conformity with a violent character).

**\*16** Nevertheless, assuming for the sake of argument that Diles's conduct was ambiguous, the trial court acted within its discretion in excluding the proffered evidence because the evidence was not probative of the reasonableness of appellant's fear for his life. *See* Tex.R. Evid. 404(b); *Ex parte Miller,* 330 S.W.3d at 618; *Thompson,* 659 S.W.2d at 654 (upholding trial court's decision to exclude evidence of victim's prior convictions where the convictions were not "probative of the reasonableness of [defendant's] belief her use of force was necessary within the meaning of [Texas Penal Code sections] 9.31 and 9.32"). Appellant does not explain how the proffered evidence of Diles's physical abuse of Castillo and Diles's gang membership clarifies Diles's conduct as deadly conduct justifying appellant's use of deadly force in self-defense. *See* Tex. Penal Code Ann. §§ 9.31, 9.32. Among other things, appellant has not explained how the proffered evidence affected his belief that the use of deadly force was immediately necessary to protect against Diles's use or attempted use of deadly force. *See id.* §§ 9.31, 9.32. Diles's alleged abuse of Castillo and Diles's gang membership did not involve deadly weapons or chokeholds. The altercation between Diles and appellant did not concern Diles's treatment of Castillo and was not asserted to be gang-related.

On this record, we conclude that evidence pertaining to Diles's physical abuse of Castillo and Diles's gang membership had no clear bearing on the altercation between appellant and Diles such that the proffered evidence showed appellant's reasonable fear for his life justifying deadly force in self-defense. Therefore, we hold that the trial court acted within its discretion in excluding testimony regarding Diles's physical abuse of Castillo (issue one) and appellant's knowledge that Diles was a member of the Crips (issue three) because this evidence pertained solely to character conformity. *See id.* §§ 9.31, 9.32; Tex.R. Evid. 404(b); *Smith,* 335 S.W.3d at 155 (evidence of victim's gang-related tattoos properly excluded as irrelevant to the issue of self-defense and unfairly prejudicial where the altercation leading to victim's

death was not gang-related); *cf. Thompson*, 659 S.W.2d at 654 (victim's prior convictions for unlawfully carrying a weapon were not probative of the reasonableness of defendant's belief that her use of deadly force was necessary for self-defense where victim approached defendant without showing a gun, defendant never testified that she thought victim was armed, and defendant stated that she shot victim because she "was scared of him").

We hold that the trial court did not abuse its discretion by excluding testimony regarding Diles's physical abuse of Castillo (issue one) and appellant's knowledge that Diles was a member of the Crips (issue three) offered in support of appellant's self-defense theory.

## C. Castillo's Credibility

Next, appellant contends that the trial court abused its discretion by excluding the proffered evidence when offered to challenge Castillo's credibility.

Appellant asserts in his brief:

> Castillo's denials that Diles did not physically abuse her or smoke crack cocaine in front of her or in their home stands in stark contrast with the testimony of [a]ppellant and [Borner]. It is difficult to imagine a situation where the accused would be more entitled to have the jury gauge the credibility of a key prosecution witness, by confronting and cross-examining that witness's patently inconsistent statements in the crucible of cross-examination, than in this case.[18]

We analyze appellant's argument as challenging the trial court's ruling limiting appellant's cross-examination of Castillo.[19]

*17 The record shows that appellant's counsel cross-examined Castillo about her relationship with Diles as follows:

[APPELLANT'S COUNSEL:] Now, let's talk a little bit about some of the statements that you've made. Today you told the jury that you and [Diles] knew each other for five and a half years?

[CASTILLO:] Correct.

[APPELLANT'S COUNSEL:] And that you guys had your problems, your good days and your bad days?

[CASTILLO:] Correct.

[APPELLANT'S COUNSEL:] What do you mean by that?

[CASTILLO:] Like all couples have good days and bad days. You fight sometimes, you argue. You argue and fuss and fight, and sometimes it's good and sometimes it's not good. With us it was bad because he was battling an addiction.

[APPELLANT'S COUNSEL:] And when you fought, he would get physical with you, wouldn't he?

[CASTILLO:] No, ma'am.

[APPELLANT'S COUNSEL:] It is your testimony here today that [Diles], you're telling this jury, that [Diles] was never physical with you; is that your testimony to this jury today?

[CASTILLO:] If you want to call pushing, yeah, we pushed each other around. As far as black eyes, punching, kicking, no.

[APPELLANT'S COUNSEL:] So, your testimony now is that you would get physical in that you would—he would push you and you would push him back?

[CASTILLO:] Yes.

[APPELLANT'S COUNSEL:] Is it your testimony that it never got worse than that?

[CASTILLO:] Yes.

THE COURT: Will the attorneys approach please?

(Bench conference.)

THE COURT: All right. And perhaps there was—maybe you misconstrued my ruling. Just so that we're clear, we talked about opening statements, and we talked about the fact that there may come a time when reputation testimony could become admissible in regards to [appellant's] knowledge of [Diles's] reputation.

[APPELLANT'S COUNSEL]: Right.

THE COURT: At this time, I have not ruled on [whether] extraneous bad acts on the part of [Diles] are admissible for character conformity or anything else. They're clearly not relevant to prove character conformity, and I haven't ruled that they're admissible for any other purpose. I have granted the [m]otion in [l]imine. While I gave you some latitude in opening statement, now I have not determined this evidence to be admissible; and it's not admissible at this time.

[APPELLANT'S COUNSEL:] Okay. I was responding to —on direct examination, she said that they had their good days and bad days.

THE COURT: And she answered that question.

[APPELLANT'S COUNSEL:] And the reason for my questioning at this point was because that answer mislead the jury to make it sound like

THE COURT: I'm not going to allow you to, I guess, there was a [m]otion in [l]imine regarding that. It is still in effect.

[APPELLANT'S COUNSEL:] At this point, I would ask the Court that I be allowed to go into that with this particular witness. And so you're saying—and I want to make sure—and I'm only doing this to make sure that I'm asking at this point to be able to go into it with this particular witness at this time.

THE COURT: I've made it very clear that—

[APPELLANT'S COUNSEL:] Okay.

(End of bench conference.)

### 1. Error preservation at trial

*18 Texas courts recognize a "narrow exception" to Texas Rule of Evidence 103(a)(2)'s requirements for error preservation during the defendant's cross-examination of a State's witness. See Holmes v. State, 323 S.W.3d 163, 169 (Tex. Crim.App.2009). A defendant may preserve a complaint when a trial court prohibits the defendant from questioning a State's witness about matters that affect the "witness's credibility" by merely establishing " 'what general subject matter he desire[s] to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence.' " Id. at 168 (quoting Virts v. State, 739 S.W.2d 25, 29

(Tex.Crim.App.1987)). A "witness's credibility" refers to "personal characteristics of the witness." Holmes, 323 S.W.3d at 168. Matters that affect a "witness's credibility" are "matters which might show malice, ill feeling, ill will, bias, prejudice, or animus." Id. "The credibility of a witness's testimony," in contrast, refers to the substance of the evidence. Id.; see id at 170–71 (defendant's proffer that he wished to challenge the underlying science of a breathalyzer machine merely called into question the substance of the State's expert's testimony, not the expert's credibility). A defendant who wishes to cross-examine a State's witness regarding "the credibility of a witness's testimony" must preserve error according to Rule 103(a)(2). Id. at 169.

The record shows that appellant did not make an offer of proof concerning the testimony he wished to elicit, during Castillo's cross-examination, as to appellant's knowledge that Diles was a member of the Crips (issue three). Additionally, it is not otherwise apparent from the record that appellant's counsel wished to explore this matter during Castillo's cross-examination. We hold that appellant did not preserve a complaint regarding the exclusion of testimony regarding appellant's knowledge that Diles was a member of the Crips during Castillo's cross-examination. See Tex.R. Evid. 103(a) (2); Holmes, 323 S.W.3d at 168–69; see also Tex.R.App. P. 33.1.

It is a closer question whether appellant preserved a complaint regarding the exclusion of testimony as to Diles's physical abuse of Castillo (issue one) for the purpose of attacking Castillo's credibility on cross-examination.

The record shows that appellant's counsel examined Castillo regarding her testimony on direct examination. Counsel asked Castillo to explain her statement that she and Diles "had our good days and our bad days." Counsel asserted at the bench conference during cross-examination: [T]he reason for my questioning at this point was because that answer mislead the jury to make it sound like— ." The trial court interrupted appellant's counsel at this point.

Appellant's counsel never asserted that she wished to examine Castillo regarding malice, ill feeling, ill will, bias, prejudice, or animus. See Holmes, 323 S.W.3d at 168. Additionally, counsel never asserted that she wished to examine Castillo regarding "inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting [her] credibility." See Virts v. State, 739 S.W.2d 25, 29 (Tex.Crim.App.1987).

Counsel's questions to Castillo and counsel's argument to the trial court centered around the meaning of Castillo's answer on direct examination that she and Diles "had our good days and our bad days;" counsel's questions and arguments did not necessarily imply an attack on Castillo's credibility.[20]

Nevertheless, we assume without deciding that appellant preserved error regarding the trial court's exclusion of testimony as to Diles's physical abuse of Castillo during Castillo's cross-examination. We examine whether the trial court erred by excluding any additional testimony appellant may have sought to elicit on the subject.

### 2. Collateral matter

**\*19** The State contends that the trial court acted within its discretion by limiting cross-examination testimony on the matter of Diles's physical abuse of Castillo because it was collateral to the issues at trial.

The general rule is that a party is not entitled to impeach a witness on a collateral matter. *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex.Crim.App.1990). " 'The test as to whether a matter is collateral is whether the cross-examining party would be entitled to prove it as a part of his case tending to establish his plea.' " *Id.* (quoting *Bates v. State*, 587 S.W.2d 121, 133 (Tex.Crim.App.1979)); *see also Keller v. State*, 662 S.W.2d 362, 365 (Tex.Crim.App.1984) ("[A] 'collateral' question is one which seeks only to test the witness'[s] general credibility, or relates to facts irrelevant to the issues at trial.").[21] Additionally, "[t]he possible animus, motive, or ill will of a prosecution witness who testifies against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him." *Billodeau v. State*, 277 S.W.3d 34, 42–43 (Tex.Crim.App.2009).

Appellant contends that the matter of Diles's physical abuse of Castillo bore directly on "her animus, motive, and ill will." Appellant, however, does not explain this connection. We determine that the trial court did not err in determining that the matter of Diles's physical abuse of Castillo was collateral to the issues at trial because it did not bear on a possible animus, motive, or ill will that Castillo had to testify against appellant. *See Tollett v. State*, 422 S.W.3d 886, 893 n.2 (Tex.App.–Houston [14th Dist.] 2014, pet. ref'd) ("[A]ppellant does not

explain, and we conceive of no reason, why the excluded evidence supports a finding Officer Hernandez had a motive or bias to falsely testify.").[22]

Appellant also contends that the matter of Diles's physical abuse bore directly on Castillo's "credibility." We determine that, to the extent the matter bore on Castillo's credibility, it did so only generally. "[T]here is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals 'possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.' " *Hammer v. State*, 296 S.W.3d 555, 562 (Tex.Crim.App.2009) (citing *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). Diles's abuse of Castillo does not explain Diles's intent on March 11, 2012, nor does it clarify appellant's apprehension of danger from Diles. We hold that the matter of Diles's abuse of Castillo is collateral to the issues at trial. *See Keller*, 662 S.W.2d at 365; *Clay v. State*, 390 S.W.3d 1, 12 (Tex.App.–Texarkana 2012, pet. ref'd) ("[T]he attempted impeachment was an attack on the witness'[s] general credibility—'you lied to your parents so we may infer that you are lying about this sexual assault.' "). Therefore, the trial court did not abuse its discretion in limiting testimony, during Castillo's cross-examination, offered to impeach Castillo's credibility on a collateral matter. *See Ramirez*, 802 S.W.2d at 675.

### 3. False impression

**\*20** Determining the matter to be collateral does not end our analysis. While generally a party is not entitled to impeach a witness on a collateral matter, when a witness leaves a false impression concerning a matter relating to her credibility, the opposing party is allowed to correct that false impression. *Id.* at 675–76; *see Daggett v. State*, 187 S.W.3d 444, 454 n.24 (Tex.Crim.App.2005) ("[T]he concept of impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence.") (internal quotations omitted). This type of impeachment, however, is only permissible when the witness voluntarily testifies to the collateral matter. *Lopez v. State*, 928 S.W.2d 528, 531 (Tex.Crim.App.1996). "The State may not rely on its own questioning on cross-examination to contradict the defendant and get in evidence collateral matters and evidence of convictions for other offenses which would otherwise be inadmissible." *Shipman v. State*, 604 S.W.2d 182, 185 (Tex.Crim.App. [Panel Op.] 1980); *see*

*also Saglimbeni v. State,* 100 S.W.3d 429, 434 (Tex.App.–San Antonio 2002, pet. ref'd) ("There is no reason the false impression rule should not work both ways.").

Castillo did not voluntarily testify regarding Diles's physical abuse. She testified on direct examination that she and Diles "had our good days and our bad days." She further explained that the couple's bad days were due to Diles's drug abuse. Appellant's counsel asked Castillo to clarify her answer on cross-examination. Castillo stated: "Like all couples have good days and bad days. You fight sometimes, you argue. You argue and fuss and fight, and sometimes it's good and sometimes it's not good. With us it was bad because he was battling an addiction." Counsel then asked: "And when you fought, he would get physical with you, wouldn't he?" Castillo answered: "No, ma'am." She then qualified her statement by testifying that she and Diles pushed each other around, but that the abuse never got worse than that.

We determine that Castillo did not volunteer testimony regarding Diles's physical abuse; instead, she testified on this matter only when prompted by appellant's counsel. Under these circumstances, Castillo did not "open the door" to the admission of evidence to correct a false impression. *See Lopez,* 928 S.W.2d at 531 (evidence not admissible to correct a false impression regarding defendant's behavior on drugs when the State asked appellant on cross-examination about his behavior on drugs). We hold that the trial court did not abuse its discretion in excluding testimony regarding Diles's physical abuse of Castillo during Castillo's cross-examination.[23]

We hold that the trial court did not abuse its discretion by excluding testimony regarding Diles's physical abuse of Castillo (issue one) and appellant's knowledge that Diles was a member of the Crips (issue three) offered to attack Castillo's credibility.

### D. Rebuttal Character Evidence

Finally, appellant argues that testimony regarding Diles's physical abuse of Castillo and appellant's knowledge that Diles was a member of the Crips was admissible to rebut the false impression Castillo gave to the jury of Diles's peaceable character. Appellant asserts that the State "opened the door" to rebuttal character evidence by "recount[ing] that Diles'[s] nickname was 'Mellow' " and by "volunteering that Diles earned this inherently-peaceable nickname because 'he was just real laid back.' "

*21 A witness may "open the door" to rebuttal character evidence in a homicide case by placing the defendant's or the complainant's peaceable character at issue. *See* Tex.R. Evid. 404(a)(2); *Harrison v. State,* 241 S.W.3d 23, 25–28 (Tex.Crim.App.2007) (trial court did not abuse its discretion by allowing rebuttal character evidence from the State after a defense witness testified that defendant was a "good" and "sweet" person); *Rivera v. State,* 82 S.W.3d 64, 67–68 (Tex.App.–San Antonio 2002, pet. ref'd) (trial court did not abuse its discretion by refusing rebuttal character evidence from defendant after a State's witness testified that victim's nickname was "Psycho" and that victim was called "Psycho" because "[h]e was kind of funny and crazy all the time"). Under Rule 405, proof of character must be made by testimony as to reputation or by testimony in the form of an opinion; cross-examination is allowable into relevant specific instances of conduct. Tex.R. Evid. 405; *Harrison,* 241 S.W.3d at 25. Cross-examination rebuttal evidence may be elicited in the form of "have you heard" or "were you aware" questions about specific instances of conduct inconsistent with the character trait brought into issue. *Harrison,* 241 S.W.3d at 25.

The record shows that Appellant's counsel was the first person at trial to refer to Diles as "Mellow." Counsel referred to Diles as "Mellow" in her opening statement, and she continued to refer to Diles as "Mellow" throughout trial.

The record also shows that the State asked Castillo the following on direct examination:

[THE STATE:] Did [Diles] have a nickname at all?

[CASTILLO:] Mellow.

[THE STATE:] Mellow. Do you know how he got that nickname?

[APPELLANT'S COUNSEL]: Objection, calls for speculation.

THE COURT: You may answer if you know.

[CASTILLO:] Me, ma'am?

THE COURT: Yes.

[CASTILLO:] Because he was just real laid back.

On this record, it is debatable whether the State or appellant brought Diles's character into issue. Assuming, without

deciding that the State "opened the door" to rebuttal evidence as to Diles's character, we hold that the trial court did not abuse its discretion by excluding testimony that Diles physically abused Castillo (issue one) and that appellant knew that Diles was a member of the Crips (issue three).

Appellant does not clarify which trial court rulings were abuses of discretion. To the extent appellant contends that the trial court abused its discretion by excluding testimony from his witnesses, we determine that such exclusion was not an abuse of discretion. Under Rule 405, in all cases in which evidence of a person's character trait is admissible, proof may be made by testimony as to reputation or testimony in the form of an opinion. Tex.R. Evid. 405(a). Testimony regarding Diles's physical abuse of Castillo and testimony that appellant knew that Diles was a member of the Crips is not reputation or opinion testimony. Cf. Tibbs, 125 S.W.3d at 89. Therefore, appellant did not undertake to elicit such testimony from his witnesses. See Tex.R. Evid. 405(a).

Appellant's counsel also sought to cross-examine Castillo regarding Diles's physical abuse toward her. [24] To the extent appellant challenges the exclusion of testimony, during Castillo's cross-examination, we hold that the trial court did not abuse its discretion because appellant's counsel did not apprise the trial court that she wished to cross-examine Castillo to discredit her testimony as to Diles's peaceable character. See Harrison, 241 S.W.3d at 25 ("The purpose of permitting [character witness] cross-examination is not to discredit the person whose character is in issue, but rather to discredit the testimony of the character witness.").

The record shows that appellant's counsel did not cross-examine Castillo regarding her statement that Diles was "just real laid back." Instead, counsel inquired into Castillo's statement that she and Diles "had our good days and our bad days." At the bench conference during Castillo's cross-examination, appellant's counsel asserted that she sought to inquire as to Castillo's statement that she and Diles "had our good days and our bad days" because "that answer mislead the jury." The next day, before the resumption of trial, appellant's counsel told the court that "it was [counsel's] intention to impeach [Castillo] on prior inconsistent statements." Later, counsel attempted to introduce evidence of Diles's physical abuse of Castillo through appellant's and Bomer's testimony. Counsel made an offer of proof. Counsel proffered that appellant and Borner would have testified as to Diles's physical abuse of Castillo; counsel did not proffer additional

lines of inquiry she would have explored during Castillo's cross-examination.

**\*22** On this record, we determine that appellant's counsel did not argue in the trial court that testimony regarding Diles's physical abuse of Castillo was admissible to discredit her testimony as to Diles's peaceable character. Therefore, appellant did not preserve a complaint that the trial court abused its discretion by excluding Castillo's testimony on grounds that it was admissible to discredit any character testimony she may have given on direct examination. See Tex.R.App. P. 33.1; Tex.R. Evid. 405(a); Reyna, 168 S.W.3d at 177 ("[I]t is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible.").

We hold that the trial court did not abuse its discretion by excluding testimony regarding Diles's physical abuse of Castillo (issue one) and appellant's knowledge that Diles was a member of the Crips (issue three) offered to rebut the State's impression of Diles's peaceable character.

We overrule appellant's issues one, two, and three.

## BRADY CLAIM

In his fourth issue, appellant contends that the trial court erred by denying his request that the State provide him with copies of offense reports in cases in which Diles was charged with crimes of violence.

The trial court signed a discovery order requiring the State to furnish for inspection and copying "[a]ll exculpatory evidence pursuant to Brady v. Maryland and related cases." See Brady v. Maryland, 373 U.S. 83 (1963). On the second day of trial, appellant's counsel requested copies of the offense reports "for [Diles's] prior acts of violence" pursuant to the court's discovery order. Counsel argued that the offense reports were "Brady material." The trial court denied counsel's request. Citing Pena v. State, 353 S.W.3d 797, 814–15 (Tex.Crim.App.2011), appellant argues that the trial court abused its discretion by not enforcing the discovery order. Appellant asserts: "The offense reports of Diles'[s] prior convictions for robbery and assault would have led to the discovery of witnesses in these cases—either Diles'[s] victims or the peace officers who investigated them—whose testimony as to his character and reputation for violence was admissible."

In *Brady v. Maryland,* the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87; *see also United States v. Bagley,* 473 U.S. 667 (1985). In *Pena v. State,* the Texas Court of Criminal Appeals held that, to find reversible error under *Brady* and *Bagley,* a defendant must show that (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed the outcome of trial would have been different. *Pena,* 353 S.W.3d at 809. Additionally, the evidence central to the *Brady* claim must be admissible in court. *Id.; see id.* at 809–15 (trial court erred in denying defendant's motion for new trial where audio portion of a videotape that was discovered in the State's possession after the jury began deliberations was shown to be admissible as exculpatory and impeachment evidence and undermined confidence in the conviction the jury rendered).

To establish materiality under *Brady,* a defendant must show that, "in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure." *Id.* at 812 (internal quotations omitted). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 110–11 (1976).

\*23 Appellant speculates as to the existence, contents, favorability, and usefulness of offense reports in cases in which Diles was charged with crimes of violence. Appellant anticipates that the offense reports, if in existence, could have led to the discovery of character witnesses, whose testimony as to Diles's character for violence could have affected the jury's decision on appellant's guilt. We hold that appellant's speculation does not establish *Brady* materiality. *See Pena,* 353 S.W.3d at 812; *Michaelwicz v. State,* 186 S.W.3d 601, 615 (Tex.App.–Austin 2006, pet. ref'd) ("The mere possibility that appellant may have found the name or names of other men or suspects to suggest as alternative perpetrators in the instant case which might have helped the defense or might have affected the outcome of the trial is not 'materiality' under *Brady.*").

We hold that the trial court did not err in denying appellant's request that the State provide him with copies of offense reports in cases in which Diles was charged with crimes of violence because appellant did not establish the State's obligation to disclose the offense reports under *Brady. See Pena,* 353 S.W.3d at 812; *Page v. State,* 7 S.W.3d 202, 206 (Tex.App.–Fort Worth 1999, pet. ref d) ("We will not order the State to produce information under *Brady* based merely on Appellant's speculation that the requested information contained exculpatory evidence."); *see also Thomas v. State,* 841 S.W.2d 399, 407 (Tex.Crim.App.1992) (the State's duty to disclose evidence under *Brady* "attaches with or without a request for the evidence."); *Michaelwicz,* 186 S.W.3d at 616 ("Police arrest and offense reports are not generally subject to production."). We overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's four issues, we affirm the trial court's judgment.

(McCally, J., concurring).

Sharon McCally, Justice, concurring.

Appellant shot Diles. In his murder trial, appellant urged self defense, alleging he feared for his life (apprehension of danger) and Diles was the first aggressor. To support that defense, appellant offered and the trial court refused three categories of character evidence: Diles's convictions, Diles's Crip gang membership, and Diles's physical abuse of his girlfriend/witness Castillo. Appellant also sought and was refused copies of offense reports in which Diles was charged with crimes of violence, arguing it was *Brady* material. The Majority affirms appellant's conviction, holding:

(a) Appellant has not established *Brady* materiality.

(b) The trial court's exclusion of **evidence of Diles's convictions** is affirmed because appellant failed to preserve the alleged error through failure to request or obtain a ruling on the admissibility of such testimony.

(c) The trial court's exclusion of **evidence of Diles's gang membership** is affirmed because:

(i) appellant failed to establish that Diles's alleged gang membership clarified whether Diles was the first aggressor (ambiguous acts) for purposes of self defense;

(ii) appellant failed to establish that his own testimony about his altercation with Diles, if believed, needed further character-evidence clarification of his apprehension of danger (ambiguous acts) for purposes of self defense;

(iii) appellant failed to preserve his complaint that he was entitled to cross examine Castillo on Diles's gang membership as a matter affecting her credibility; and

(iv) even if the State opened the door to rebuttal character evidence by eliciting testimony that Diles was "just real laid back," the gang membership proffer is not admissible under Rule 405 where, as here, it is neither reputation nor opinion testimony.

(d) The trial court's exclusion of **evidence of Diles's physical abuse of Castillo** is affirmed because:

**\*24** (i) appellant failed to establish that Diles's alleged physical abuse of Castillo clarified whether Diles was the first aggressor (ambiguous acts) for purposes of self defense;

(ii) appellant failed to establish that his own testimony about his altercation with Diles, if believed, needed further character-evidence clarification of his apprehension of danger (ambiguous acts) for purposes of self defense;

(iii) even if appellant preserved his complaint that he was entitled to cross examine Castillo on Diles's physical abuse to challenge her credibility, Diles's alleged physical abuse is a collateral matter;

(iv) even if appellant preserved his complaint that he was entitled to cross examine Castillo on Diles's physical abuse to challenge her credibility, as Castillo did not open the door by volunteering testimony about such abuse, appellant was not allowed to adduce abuse testimony to correct a false impression; and

(v) even if the State opened the door to rebuttal character evidence by eliciting testimony that Diles was "just real laid back," appellant failed to preserve error because counsel did not refer to the "laid back" testimony during the offer of proof

I join the Majority's disposition and analysis of the alleged *Brady* violation. I join the Majority's holding that the alleged evidentiary error in excluding Diles's prior convictions was not preserved because those convictions were neither mentioned nor proffered in the offer of proof in this case. *See* Tex.R.App. P. 33.2.

I join the Majority's disposition of the alleged evidentiary error in excluding Diles's gang membership but do not join the holding or analysis. Instead, I would hold appellant was not harmed by the exclusion of such evidence where the evidence was admitted elsewhere in the record and, therefore, was before the jury. *See Womble v. State*, 618 S.W.2d 59, 62 (Tex.Crim.App. [Panel Op.] 1981).[1]

I join the Majority's disposition of the alleged evidentiary error in excluding Diles's physical abuse of Castillo but do not join the holding or analysis. Instead, I would hold that (1) the trial testimony about Diles's full-nelson hold of appellant did create an ambiguity on whether Diles was the first aggressor; therefore, Diles's specific violent acts were admissible to prove Diles was the first aggressor, and the trial court erred in excluding appellant's testimony about such acts;[2] (2) the State opened the door to cross examination about Diles's physical abuse of Castillo when it injected the nature of the Castillo/Diles relationship into evidence by asking Castillo on initial direct examination what her relationship with Diles was like; and because the State opened the door and left a false impression, the trial court erred in refusing a full cross examination on the relationship; and (3) evidence of Diles's physical abuse of Castillo, known to appellant, is relevant to prove appellant's apprehension of danger, unlike the evidence offered in *Thompson v. State*, 659 S.W.2d 649, 653–54 (Tex.Crim.App.1983), relied upon by the Majority. I would further hold, however, that appellant has not established that he was harmed by any error in excluding Diles's alleged physical abuse because, considering the entire record, I cannot say that the exclusion had a substantial and injurious effect or influence in the jury reaching its verdict. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App.2000) (internal quotations omitted).[3]

**\*25** I write separately to highlight my disagreement with the Majority's analysis of the apprehension-of-danger theory of admissibility because the Majority follows, and thereby adopts as Fourteenth Court precedent, a decision of the First Court of Appeals that I believe is incorrect: *Smith v. State*, 355 S.W.3d 138, 150– 51 (Tex.App.–Houston [1st Dist.] 2011, pet. ref'd).

Texas recognizes two distinct theories for the admission of evidence of a victim's prior specific acts of violence when the defendant claims self defense: (1) apprehension of danger, which focuses on the defendant's state of mind; and (2) first aggressor, which focuses on the victim's conduct. The apprehension-of-danger theory permits a "defendant [to] offer reputation or opinion testimony or evidence of specific prior acts of violence by the victim" of which the defendant was aware to show his own self-defensive state of mind. *Ex parte Miller*, 330 S.W.3d 610, 618 (Tex.Crim.App.2009). The first-aggressor theory uses the victim's character trait to explain, for example, "the victim's aggressive move toward the defendant." *Id.* at 619. So, apprehension of danger implicates "communicated character" traits; that is, the defendant knows of the traits. First aggressor implicates "uncommunicated character" traits; that is, the defendant need not be aware of the traits. *Id.* at 618–19. With first aggressor and its focus on the victim, the conduct of the victim must be ambiguous and therefore in need of explanation. *Id.*

Like the first-aggressor theory, the apprehension-of-danger theory may be supported by specific acts of violence by the victim. *See Torres v. State*, 71 S.W.3d 758, 760–61 (Tex.Crim.App.2002). Those prior specific acts of violence need not be directed against the defendant. *Id.* at 761–62. The Texas Court of Criminal Appeals explains clearly that such specific acts of violence are admissible because they are not offered to prove that the "victim actually is violent." *Ex Parte Miller*, 33 S.W.3d at 618–19.

The logic of the distinction between these two theories brings me to the error I suggest that the Majority and our sister court in *Smith v. State* have made. The Majority, in reliance upon *Smith v. State*, incorporates an "unambiguous acts" element into an analysis of apprehension of danger and holds that because Diles's conduct was unambiguously aggressive, his conduct needs no character-evidence explanation. The

Court of Criminal Appeals has never required a defendant to demonstrate that the victim's conduct was ambiguous prior to introducing character evidence to support the defendant's own apprehension of danger. Instead, the Court of Criminal Appeals decisions upon which *Smith* relies for its "unambiguous acts" requirement are first-aggressor cases. *See, e.g., Torres*, 71 S.W.3d at 760 n.4, 762; *Thompson v. State*, 659 S.W.2d 649, 653–54 (Tex.Crim.App.1983) (analyzing unambiguous acts within first-aggressor theory only). The victim's conduct, ambiguous or not, is not at issue for the apprehension-of-danger theory of admission. It is the defendant's state of mind and the reasonableness of such state of mind that is important. Thus, appellant was entitled to use reputation testimony or opinion testimony or evidence of specific prior acts of violence by Diles, known to appellant, to show that appellant was in fear of his life and reasonably so.[4]

*26 The jury, evaluating the defendant's potential self-defensive state of mind, should hear about the victim's character for violence known to the defendant even if such evidence is unnecessary to clarify the victim's state of mind. Whether Diles's motive for placing appellant in a full nelson is or is not "ambiguous" from the totality of the testimony should not deprive appellant of the chance to show that his fear of Diles was reasonable in light of Diles's physically violent past acts.

## CONCLUSION

For the reasons I have outlined, I respectfully concur.

(Boyce, J., majority).

**All Citations**

--- S.W.3d ----, 2015 WL 4718861

## Footnotes

1     *See* Tex. Penal Code Ann. § 19.02(b) (Vernon 2011).

2     Appellant refers to Diles's prior convictions for assault and robbery throughout his appellate brief; however, appellant's trial counsel asserted at the bench conference that Diles was charged twice with robbery, but that the charges were reduced to theft. *See* Tex. Penal Code Ann. §§ 29.02 (Vernon 2011), 31.03 (Vernon Supp. 2014).

3     The parties also refer to Castillo as Diles's wife or common-law wife. We refer to Castillo as Diles's girlfriend because Castillo was legally married to another man at the time of trial.

4     We do not summarize the officer's testimony and several other witnesses' testimony because appellant does not challenge the sufficiency of the evidence supporting his conviction, and because the testimony is not dispositive of appellant's issues.

The State asked Castillo to "talk about March 11th of 2012." Castillo testified to events that occurred on March 10, 2012, as well as events that occurred during the early morning of March 11, 2012. Diles was shot at approximately 5:00 a.m. on March 11, 2012.

Castillo demonstrated the grasp to the jury. The Webster's International Dictionary defines "full nelson" as "a hold gained by a wrestler who from a position behind his opponent places both arms under his opponent's arms and clasps his hands or wrists behind the opponent's neck." *See* Webster's Third New International Dictionary 919 (Philip Babcock Grove ed., 1993).

Counsel purported to make a bill of exception; however, counsel proffered the substance of the excluded evidence before the trial court on the record. Under these circumstances, counsel made an offer of proof, rather than a bill of exception. *Compare* Tex.R. Evid. 103 *with* Tex.R.App. P. 33.2; *see also In re Estate of Miller,* 243 S.W.3d 831, 837–38 (Tex.App.–Dallas 2008, no pet.) (an offer of proof formerly was referred to as an informal bill of exception).

"[T]here are two distinct scenarios in which rulings excluding evidence might rise to the level of a constitutional violation: 1) a state evidentiary rule which categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense; and 2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence which forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Wiley v. State,* 74 S.W.3d 399, 405 (Tex.Crim.App.2002) (internal quotations omitted). Appellant does not complain that a state evidentiary rule categorically and arbitrarily prohibited him from offering otherwise relevant, reliable evidence which is vital to his defense; he argues only that the trial court made clearly erroneous rulings excluding admissible evidence that prevented him from presenting his defense.

We do not analyze harm because we conclude that the trial court did not abuse its discretion. *See Wiley,* 74 S.W.3d at 408.

The Texas Court of Criminal Appeals adopted revisions to the Texas Rules of Evidence, except as to Rules 511 and 613, effective April 1, 2015. *See* Final Approval of Amendments to the Texas Rules of Evidence, Misc. Docket No. 15–001 (Tex.Crim.App. Mar. 12, 2015). We cite to the previous version of the Rules because appellant's trial occurred in 2013, before the effective date of the amendments.

Character evidence introduced to prove the victim's status as first aggressor is called "uncommunicated character" evidence because "it does not matter if the defendant was aware of the victim's violent character." Ex parte Miller, 330 S.W.3d at 619.

Texas common law was broader and allowed the admission of evidence of specific instances of behavior to show a victim's character trait for violence. *Ex parte Miller,* 330 S.W.3d at 619 n.21; *see Dempsey v. State,* 266 S.W.2d 875 (Tex.Crim.App.1954). The Texas Rules of Evidence superseded the common law standard. *See Tate,* 981 S.W.2d at 192.

Evidence introduced to show a defendant's apprehension of danger is called "communicated character" evidence "because the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real or not." Ex parte Miller, 330 S.W.3d at 618.

Appellant, Castillo, and Brown each testified that Diles initiated contact with appellant by grabbing appellant's neck. Appellant's counsel asserted during her closing argument: "When you grab a man in the fashion that ... [Diles] grabbed [appellant], your intentions are clear. [Appellant] wasn't punching holes in the wall at that time, so the only reason that [Diles] grabbed him at that point was to harm him." Counsel further stated: "No witness told you that [appellant] was starting to beat [Diles] up. No witness told you that [appellant] was trying to harm him, only that he was trying to get away." On appeal, appellant's counsel argued that appellant could have been considered the first aggressor for punching holes in the apartment wall. Counsel also asserted that it is ambiguous whether Diles put appellant in a playful, rather than harmful, wrestling hold, and that it is ambiguous whether Diles was reaching for appellant's gun when Diles grabbed appellant's shirt in Castillo's version of events.

Rule 405 provides that: "In all cases where [reputation or opinion] testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct." Appellant does not argue that the trial court denied him the opportunity to cross-examine a character witness through inquiry into relevant specific instances of Diles's conduct. This matter is addressed in further detail below.

Appellant cites to *Thompson v. State,* 659 S.W.2d 649, 654 (Tex.Crim.App.1983), *superseded by rule,* Tex.R. Evid. 404, *as recognized in Mozon,* 991 S.W.2d at 845–46, to support his assertion that "the trial court's reasoning and analysis in excluding evidence of Diles'[s] violent past was an abuse of discretion." *Thompson* was decided under the now-superseded common law standard, which allowed the admission of evidence of prior specific instances of violence to show a victim's character trait for violence. *See id.* at 653–55; *Ex parte Miller,* 330 S.W.3d at 619 n.21; *Mozon,* 991 S.W.2d at 845–46. Appellant asserts: "[T]he [*Thompson*] court ... concluded that it was error to exclude evidence of the victim's violent character because his act of walking toward the defendant with his arms outstretched was ambiguously

aggressive." *Thompson* held that the trial court properly excluded evidence of the victim's prior convictions because the defendant "failed to establish the prior convictions involved acts of violence which would explain the [victim's] ambiguously aggressive conduct toward [the defendant] at the time of the offense." *Thompson,* 659 S.W.2d at 655.

Appellant argues that Diles's intent in grabbing appellant was ambiguous. He asserts: "[T]he vast body [of] evidence of Diles'[s] character and reputation for violence and aggression [a]ppellant repeatedly sought to elicit was clearly relevant." Appellant's trial counsel did not seek to admit character evidence. Counsel sought to admit evidence regarding Diles's repeated physical abuse of Castillo (issue one) and evidence that appellant knew that Diles was a member of the Crips (issue three). Evidence of these extraneous acts is "admissible only to the extent that they are relevant for a purpose other than character conformity." *Torres,* 71 S.W.3d at 760; *see* Tex.R. Evid. 404(b). Appellant does not explain how testimony of Diles's physical abuse of Castillo and appellant's knowledge of Diles's gang membership showed anything other than Diles's conformity with a violent character or clarified Diles's intent in grabbing appellant.

Castillo's statements were not inconsistent with appellant's and Borner's statement at the time Castillo testified because Castillo testified before appellant and Borner testified. Appellant does not clarify which of Castillo's statements he considers "patently inconsistent."

Appellant complains about only one trial court ruling in the section of his brief entitled "This Evidence Bore Directly on Castillo's Credibility." He states: "Because the trial court's ruling is foreclosed by the controlling authority alluded to above, it was an abuse of discretion."

Additionally, it is not clear what other questions appellant's counsel would have asked Castillo. *Cf. Williams v. State,* 937 S.W.2d 479, 489 (Tex.Crim.App.1996) (trial court's error in excluding testimony, if any, was cured when defense counsel successfully elicited testimony; any further testimony that appellant may have wished to elicit was not apparent from the context).

Appellant does not contend that he had to prove Diles's violent character or that the State had to prove Diles's peaceable character at trial. *See Tate,* 981 S.W.2d at 193 n.5 ("[A] victim's character is not an essential element of a claim of self-defense.").

Evidence of Diles's physical abuse of Castillo may suggest that Castillo was predisposed to testify in favor of appellant, the man who shot her abuser. Appellant does not explain how the evidence shows that Castillo may have been predisposed to testify against appellant.

Additionally, the trial court did not abuse its discretion in excluding testimony from appellant and Borner offered to rebut Castillo's impression of Diles's physical abuse because Castillo did not "open the door" to such testimony. *See Lopez,* 928 S.W.2d at 531; *cf. Hayden v. State,* 296 S.W.3d 549, 554 (Tex.Crim.App.2009) ("Unless the witness's testimony created a false impression that is directly relevant to the offense charged, allowing a party to delve into the issue beyond the limits of cross examination wastes time and confuses the issues.") (internal quotations omitted).

Counsel did not attempt to cross-examine Castillo regarding appellant's knowledge that Diles was a member of the Crips.

Appellant's counsel asked whether appellant knew Diles to be a Crip. Appellant responded, "Yes, ma'am." Although the State objected, and the objection was sustained, the trial court was not asked and did not instruct the jury to disregard the testimony.

*See Cadoree v. State,* 810 S.W.2d 786, 791 (Tex.App.–Houston [14th Dist.] 1991, pet. ref d) (citing *Gutierrez v. State,* 764 S.W.2d 796, 798 (Tex.Crim.App.1989)) (noting that carrying a weapon "is not *per se* a violent or aggressive act").

The jury did not hear that Diles physically abused Castillo on previous occasions. The jury did, however, hear uncontroverted testimony that after appellant made holes in Castillo's apartment walls with his fist, Diles, intoxicated and under the influence of cocaine, put appellant in a full-nelson hold and would not free him as he forced appellant outside of the apartment. Appellant agrees that Diles did not have a weapon but suggests that Diles was reaching for the gun tucked in appellant's waistband during the altercation. The disinterested eyewitness and all other witnesses to the altercation agree, if on nothing else, that Diles did not succeed in obtaining the gun before he and appellant separated. Appellant then had the weapon in his hand and Diles was unarmed and appellant shot. The bullet entered the back of Diles's head. Appellant himself was ultimately unable to testify about where each of the parties were when he fired the shot, but appellant mentioned that he "got loose" before he shot. The jury asked that appellant's testimony on that "got loose" point be read back as well as the testimony of the eyewitness: He (appellant) walked away, then came back and shot him (Diles).

The jury charge instructed, among other things, that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force. Whether appellant was initially or reasonably fearful of Diles does not appear

to have influenced the jury's verdict as much as whether appellant considered shooting Diles immediately necessary to protect himself from Diles.

4    Although appellant's trial counsel repeatedly referred to "opinion or reputation testimony" when discussing the admissibility of Diles's specific bad acts, counsel did not make an offer of proof for appellant's opinion or Diles's reputation. Nor did the trial court specifically exclude such testimony; the court ruled that it was excluding evidence of "specific bad acts" regarding gang membership and the Castillo relationship.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.